No. 23,101.

THE STATE OF KANSAS, *Appellee*, v. REGINALD SHAW, *Appellant.*

### SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Attempt to Commit Arson—Weight of Evidence.* The uncertainty of a witness in the matters to which he testifies only affects the weight to be given to his testimony; it does not affect its competency.

2. SAME—*Conspiracy—Circumstantial Evidence—Acts of Conspirator—Order of Proof.* Where a crime has to be established by circumstantial evidence, the order of proof is to be controlled largely by the trial court in the exercise of its discretion, and it cannot always be required that evidence of a conspiracy to commit the crime be completely established before the state may be permitted to show the acts or conduct of a co-conspirator.

3. SAME—*Evidence—Verdict—Judgment.* The evidence, summarized in the opinion, was sufficient to sustain the verdict and judgment.

4. SAME—*Motive for the Crime Sufficiently Disclosed.* The facts established by the state's evidence sufficiently disclosed defendant's motive in the perpetration of the crime charged.

5. SAME—*Defendant Properly Convicted of Attempt to Commit Arson.* The conviction and judgment of defendant for the crime of attempt to commit arson, under the facts in evidence, do not violate section 2 of the crimes act which forbids a conviction for an attempt to commit a crime when the crime itself is fully perpetrated.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed April 9, 1921. Affirmed.

*Sullivan Lomax,* of Cherryvale, for the appellant.

*Richard J. Hopkins,* attorney-general, *Alfred G. Armstrong,* county attorney, and *Donald W. Stewart,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Reginald Shaw and Lyal Beeson were charged jointly with an attempt to commit arson. On a separate trial, Shaw was convicted and appeals.

The state charged and its evidence tended to prove that late in the year 1919, Shaw and Beeson, as partners, commenced dealing in automobile accessories in Cherryvale. As neither had any capital, the business was established with money borrowed from a local bank. Shaw purchased a wooden building and lot, paying $2,000 therefor. The partners repaired and painted the building and stocked it with goods valued at $1,088. They also built and enclosed a sort of deck in the rear end of the building and furnished it as sleeping quarters for Beeson. In January, 1920, Shaw procured a fire insurance policy for $2,500 on the building, and a policy for $2,000 covering auto tires and tubes; and the same month, Shaw and Beeson procured a third policy for $1,000 on other contents of the building.

Shaw owned an old automobile, and Beeson owned another one of the same pattern but more valuable and a later model. There was a mortgage of $1,100 on Beeson's car. Shaw reported to the authorities that his old car had been stolen. Shaw purchased forty gallons of coal oil which was stored in the building, and this was shown to be an unusual purchase for an auto-accessory business in Cherryvale.

The evening of January 30, some of the furnishings of the deck room were removed from the building. A witness for the state testified that about midnight he saw Shaw step out of the alley at the back of Shaw's building. A few minutes later, Shaw's building was seen to be on fire. The building was securely locked, and only Shaw and Beeson carried keys thereto. A crowd gathered and broke open the building and extinguished the fire. It was discovered that coal oil had been poured on the stuff in the deck room, and that the gas cocks in the building had been turned on. Shaw's old automobile, which he had reported as stolen was in the building, bearing the tag of Beeson's car. The old car was saturated with coal oil, and a pile of

waste beneath it was soaked in kerosene, and a lighted candle was placed nearby, but the candle had not yet set fire to the waste; and coal oil had been spilled on the floor. The fire was extinguished before it had caused much destruction.

The defendant assigns various errors which will be noted:

He first complains of the admission of the evidence of a store-keeper whose testimony tended to show, but not positively, that he had sold some candles to Shaw, of the same kind as the one found burning under the old automobile. He testified:

"Well, it runs in my mind that I did sell him some candles I never kept any record of them. I wouldn't be positive about it."

The uncertainty of this witness only affected the weight to be attached to this testimony; it did not affect its competency. (*Losey v. Railway Co.*, 84 Kan. 224, 231, 114 Pac. 198; *Hanson v. Railway Co.*, 88 Kan. 313, 315, 138 Pac. 184; *The State v. Shives*, 100 Kan. 588, 589, 165 Pac. 272; Note in 4 A. L. R. 979.)

Defendant also complains because a taxi driver was permitted to testify about his employment by Beeson the evening before the fire to haul away a rug and some other articles from the sleeping quarters in the building. He urges that it was not shown that Shaw had any connection with this transaction, nor that he knew of it. While the general rule is that proof of a conspiracy to commit a crime must be shown before the acts of a coconspirator can be shown as evidence against a defendant conspirator, yet the order of proof is largely controlled by the discretion of the trial judge (*The State v. Rogers*, 54 Kan. 683, 39 Pac. 219); and where the crime has to be established by circumstantial evidence the prosecutor must be given permission to present that proof bit by bit as best he can without too rigid an enforcement of that rule. (*The State v. Miller*, 35 Kan. 328, 10 Pac. 865; *The State v. Rogers*, supra; *The State v. Wilcox*, 90 Kan. 80, 94, 132 Pac. 982). If upon the completion of the state's case, all the facts tend to show a conspiracy, the order of proof in which the acts of the coconspirators is shown is not of much importance. Furthermore, in this case we are not prepared to say that at the time this evidence was admitted the circumstances then established were insufficient to show a conspiracy between Shaw and Beeson to set fire to the property.

It is next urged that the verdict was not supported by the evidence, but the facts which we have summarized above were

clearly sufficient to justify and require their submission to the jury; the defendant's evidence was not very convincing; and the verdict must stand.

Defendant urges that no motive for the crime was established. We think it was. Defendant and his partner had been in business but a few weeks. They had no capital. They were heavily overinsured. If with impunity they had succeeded in their crime, they would have realized a handsome sum of money. They would have succeeded in making the mortgagee of Beeson's car believe that it was burned in the fire. These plans and expectations would appeal strongly to the criminal type of mind. The court discerns no failure on the part of the state to show motive for the crime.

Defendant's next point is that he was not guilty of the particular offense charged—an attempt to commit arson. He argues that the proof showed a completed offense of arson, not of an attempt. The offense charged was *an attempt* to commit the crime of arson. The proof showed an attempt to burn the building and contents, and that the purpose was defeated by the prompt extinguishment of the fire. Defendant relies on section 2 of the crimes act (Gen. Stat. 1915, § 3329) which reads:

"No person shall be convicted of an assault with intent to commit a crime, or of any other attempt to commit any offense, when it shall appear that the crime intended or the offense attempted was perpetrated by such person at the time of such assault, or in pursuance of such attempt."

Under that statute it has been held that where the proof of a completed crime of rape was established, one could not be convicted of an attempt to commit rape (*The State v. Mitchell*, 54 Kan. 516, 38 Pac. 296) ; but where rape and attempt at rape were both charged and the proof of rape was slight, and the proof of the attempt was clear, a verdict of acquittal on the charge of rape and of guilty on the charge of attempt to commit rape was upheld. (*The State v. Frazier*, 54 Kan. 719, 39 Pac. 819. See, also, *The State v. Johnson*, 78 Kan. 866, 98 Pac. 216.) Perhaps, under the authorities (5 C. J. 543), the crime of arson itself was sufficiently established to have justified a conviction for the completed crime of arson, but it cannot be said that under the evidence such a conviction was the only proper one, as in *State v. McCaffery*, 225 Mo. 617, cited by de-

fendant. In that case a very substantial portion of the building was destroyed by the fire. In the case at bar the fire had made very little headway when it was extinguished. Moreover, no instruction on this nice point was asked, nor does the record show that the matter was called to the trial court's attention.

The record contains no error, and the judgment is affirmed.