No. 28,823.

THE STATE OF KANSAS, *Appellee*, v. ARTHUR WILLIAMS et al.,
*Appellants.*

(280 Pac. 777.)

Opinion filed October 5, 1929.

*W. H. Foulke* and *Emerson Foulke*, both of Joplin, Mo., for the appellants.

*William A. Smith*, attorney-general, *Leo Armstrong*, county attorney, *Marc G. Boss*, assistant county attorney, and *F. W. Boss*, special prosecutor, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Defendant was convicted of an attempt to rob as defined in the extortion and blackmail statute, and appeals.

The statute reads as follows:

"Every person who shall knowingly send or deliver . . . any letter or writing, with or without a name subscribed thereto . . . threatening therein . . . to do any injury to the person or property of anyone, with a view or intent to extort or gain any money or property of any description, belonging to another, shall on conviction be adjudged guilty of an attempt to rob . . ." (R. S. 21-532.)

The prosecution was based on a letter addressed to Columbo Massa, a merchant of Corona, Kan. The letter was dated July 8, 1928, was postmarked Joplin, Mo., July 9, and was received by Massa by mail at Corona on July 10. The letter threatened harm to Massa and his family unless he placed $10,000 at the northeast pier of the Cherry creek bridge at nine o'clock July 12. Massa prepared a package containing old blank checks and $40 in $5 bills, and at about eight o'clock in the evening of July 12 deposited the package at the designated place. The package was so deposited that it could not be seen from the road and was covered with grass and weeds. The bridge extends east and west. At about four o'clock the next morning defendant and three companions ap-

proached the bridge from the east. Arriving at the east end of the bridge, they scattered out. A little later one of the men struck the railing of the bridge three times with some kind of a metal article, whereupon two of the men walked over to the northeast pier. An officer in hiding called out, "What are you fellows doing up there?" Defendant and his companions ran west across the bridge and were subsequently captured. The package had been taken from its place of concealment and had been dropped on the floor of the bridge at a point about twenty-five feet west of the pier, and about three or four feet out in the roadway.

The defendant disclosed a stratigraphical condition which has not been touched on by scientists in the reports of the various geological surveys of the state which have been made. Those reports define the limits of the various geological formations from the Pre-Cambrian crystalline floor of the state to the Post-Tertiary deposits, and have greatly aided in the discovery of oil. The operation and effect of physical agencies, such as those of the glacial epoch, are fully described, but the geological effect of social agencies, such as our bone-dry law and national prohibition, have been entirely neglected. Defendant's expert witnesses—he did not take the stand himself—disclosed that portions of the region in which Corona is situated contain pools or pockets of intoxicating liquor, whether on the syncline or anticline was not shown. Those reservoirs may be discovered by prodding the strata, in the nighttime, with iron rods. The defendant, those who were later with him at the bridge, an automobile driver for the party, and two other men in another automobile, drove some twenty-five miles from defendant's home, equipped to investigate this interesting geologic formation. By mere coincidence they chose the night the officers hid themselves at the Cherry creek bridge. About daybreak, after defendant and his companions had spent most of the night in fruitless exploration of the formations of the township, they just happened to come down to the bridge to find their driver. Not understanding the scientific character of the expedition, the concealed officers called to defendant and his fellow-investigators in harsh tones, chased them, shot at them, and rudely took them into custody. The county attorney went so far as to prosecute defendant criminally as having had something to do with the letter and package. The jury, not being composed of trained scientists, failed to grasp the significance of defendant's effort to develop the natural re-

sources of the state, and he was convicted and sentenced to the penitentiary.

The foregoing presents about all there is to the appeal. Some evidence which defendant regarded as important was rejected, but it was not produced when the motion for new trial was heard.

Defendant's daughter was subpœnaed as a witness for the state. She attended the trial the first day. The next day, when she was called to testify, it satisfactorily appeared that she was in Missouri, and her testimony given at defendant's preliminary examination was properly read to the jury.

The court refused to give a requested instruction that defendant must have done some overt act. The court correctly instructed the jury with reference to commission of the overt acts of sending and delivering the letter, and correctly instructed the jury it was not necessary defendant should have personally written or sent or delivered the letter if he conspired with others or another to do so.

The court correctly instructed the jury that the postal service was an agency of the sender to carry and deliver the letter, and that the proper place of prosecution was Cherokee county.

An assignment of error relating to order of proof is fully covered by the opinion in the case of *State v. Shaw*, 108 Kan. 781, 196 Pac. 1100.

The verdict was well supported by the evidence, and the motion for a new trial was properly denied.

The judgment of the district court is affirmed.