No. 30,150.

THE STATE OF KANSAS, *Appellee*, v. HARRY WILLIAMS, *Appellant*.

(10 P. 2d 1080.)

Opinion on rehearing filed May 7, 1932. (For original opinion of affirmance see 134 Kan. 125, 4 P. 2d 453.)

*R. L. Hamilton,* of Beloit, for the appellant.

*Roland Boynton,* attorney-general, *R. O. Mason,* assistant attorney-general, and *Harold N. Jordan,* county attorney, for the appellee.

The opinion of the court was delivered by

SMITH, J.: Defendant was convicted on three counts of violations of the prohibitory law. He appealed.

This case was formerly decided by this court in *State v. Williams,* 134 Kan. 125, 4 P. 2d 453. In that opinion the conviction of transportation of liquor and maintaining a nuisance was reversed, and the conviction of possession of liquor was affirmed. A motion for rehearing was allowed on the question of the admission in evidence of some statements made by the wife of appellant to the sheriff. These statements were not made in the presence of the appellant. A brief statement of the facts will be necessary to make the question clear.

A farmer boy found a sack of liquor some distance from the

public highway in a field of kafir corn which he was cutting. The sheriff was notified and came out that night. He, together with one other, concealed themselves and watched the liquor. Just about dark defendant drove up in his car and stopped. Defendant got out and entered the field. As witnesses testified, he zigzagged around in the field, and when he was at a point some forty feet from the liquor he ran into the sheriff. When he saw the sheriff, according to the sheriff's evidence, he said, "It looks like somebody was tipped off." Defendant testified that what he said was, "It looks like somebody has been tipped off." There were two tall sunflowers about equal distance from the liquor. Defendant claimed that he had stopped the car and gone into the field to attend to a call of nature. His belt was unfastened when the sheriff arrested him.

On the trial of the case the sheriff was called and testified to certain statements that the wife of appellant had made, not in the presence of the appellant. This testimony was objected to and was as follows:

"Q. And did you ask Mrs. Williams to come up to the county attorney's office? A. Yes, sir.

"Q. Were you present when she was questioned there? A. Yes, sir.

"Q. Just tell the jury, in your own words, what she said about her eyes, or about who was driving the car first. A. She said she was driving it.

"Q. Do you recall whether or not she— . . .

"Q. What did she say about her eyes? . . . A. Well, she said that her eyes had been poor, and she had told her husband that she believed she could see better to-night, and she turned off the lights to show him that she could drive without any lights on that car.

"Q. Did she say where she told him that? . . .

"Q. Just one preliminary question. Mrs. Williams, the party you are talking about here, was in the car at the time you went out to it, with Harry Williams, north of the kafir-corn field? A. Yes, she was in the car.

"Q. All right, now what did she say about whether or not the lights were on, if she said anything, from the time after they left town? A. You mean at the time I walked out to the car, or when—

"Q. No, up here in the office? . . .

"Q. What did she say? A. As I remember it, she said that she had drove from the schoolhouse over there.

"Q. Did she say anything about whether they had had them on until they got to the schoolhouse? A. Well, if she did, I have forgotten it; I don't know.

"Q. Did she say they had stopped at the schoolhouse? A. Yes."

Also, in this connection the testimony of the sheriff as to statements made by appellant becomes important. It is as follows:

"Q. Now was you present when Harry Williams was questioned about this case? A. Yes, sir.

"Q.. What did he say about his wife's eyes? A. He said they were all right.

"Q. What did he say about her turning off the lights and saying anything to him that she could drive with the lights out? A. He said it didn't happen.

"Q. What did he say about the lights, having the lights on after they left town? A. I believe he said they didn't have the lights on at all."

In the former opinion in this case it was pointed out that the admission of the statements of the wife was urged as error, but it was held that they were statements of one charged jointly with appellant and were admissible under the rule laid down in *State v. Winner*, 17 Kan. 298; *State v. Mullins*, 95 Kan. 280, 147 Pac. 828; *State v. Shaw*, 108 Kan. 781, 196 Pac. 1100. These cases hold that statements of a codefendant made after the commission of the crime are admissible in the trial of the principal when they tend to prove the commission of the crime by the principal. On the former presentation of the case the record was not clear on the point and it was assumed that the wife was charged jointly with her husband. In the motion for a rehearing, however, and in the argument on rehearing it is made plain that the wife was not charged jointly with her husband. She was not charged with anything for two or three days after the arrest of her husband. It was this fact that prompted the court to allow the rehearing. On the rehearing a further examination of the authorities moves us to conclude that there was no evidence that the wife was a coconspirator with her husband— hence the evidence was inadmissible for the reason that declarations of a coconspirator are only admissible when the conspiracy is so far proved as to make the fact a jury question.

The remaining question is, Was the inadmissible evidence sufficiently prejudicial to warrant a reversal? We have concluded that it cannot be said that the evidence was not prejudicial. The case was a circumstantial one. The evidence connecting appellant with the liquor in the field was slight, to say the least. The fact that the lights were out on the car while the husband was in the field was a circumstance slight, to be sure, but still a circumstance which had some weight with the jury on the question of whether appellant just happened to stop at that particular place for the reason he stated or drove there as part of a prearranged plan. It was, no doubt, argued to the jury that the lights were turned out in order that the presence of the car would be less noticeable. The

fact that the statements of the wife contradicted the statements of appellant also had some weight with the jury.

From what has been said it follows that the judgment of the district court is reversed with directions to award the appellant a new trial.

JOHNSTON, C. J., and BURCH, J., dissenting.