No. 38,790

THE STATE OF KANSAS, *Appellee*, v. ALVIN LEROY SMITH, *Appellant*.

(252 P. 2d 917)

Opinion filed January 24, 1953.

*Donald C. Smith* and *Fred Hall*, both of Dodge City, were on the briefs for the appellant.

*Harold R. Fatzer*, Attorney General, and *L. John Callahan*, County Attorney, were on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an appeal from a conviction of arson in a prosecution brought under G. S. 1949, 21-584, the provisions of which make it a felony for any person willfully, and with intent to defraud the insurer, to set fire to or burn personal property either of such person or owned by another, when, at the time, such property is insured against loss or damage by fire.

In the summer of 1950 the defendant, his brother John, and his father Frank, were operating as custom cutters in the western Kansas wheat harvest. John owned a 1940 ton and a half truck; Frank owned a tractor and a twelve-foot combine. On July 17th the three of them went to an insurance agency in Dodge City at which time and place John purchased a $900 policy of fire and collision insurance on the truck, and Frank purchased $800 insurance on the tractor and $2,240 insurance on the combine. The policies were written for a two-month period and the premiums were paid. Four days later the truck and tractor were destroyed by fire on U. S. Highway 50, west of Lakin.

The information upon which defendant was tried was filed December 31, 1951. The next term of court in Kearny county opened on Monday, March 10, 1952, and defendant, who had been free on bond, was in court. In reply to a question by the court he stated that an attorney of Garden City (naming him) represented him.

That attorney was not in court. The court advised defendant that his case was set for hearing the next morning at ten o'clock. The next day defendant was in court and the state announced that it was ready for trial. Defendant also announced that he was ready. The attorney previously mentioned by defendant as representing him was not in court, and during a colloquy between the court and defendant it developed that defendant had had no contact whatsoever with that attorney since December 31, 1951. At the court's suggestion defendant placed a telephone call to the attorney in Garden City, but in a few minutes reported back that he was unable to reach him. Following further discussion of the matter the court appointed another attorney, also of Garden City, and who happened to be in the courtroom, to represent defendant, and continued the case until two o'clock that afternoon so as to give defendant and his court-appointed counsel an opportunity to discuss the case. At two o'clock that afternoon the case was again called and the state announced that it was ready to proceed. Counsel for defendant orally moved for a continuance—

". . . so that we may have additional time in which to prepare our defense."

This motion was overruled and the case proceeded to trial before a jury.

The agent from whom the insurance was purchased testified concerning the issuance of the policies, that a claim for both collision and fire loss had been made, and that the loss had not been paid.

The sheriff of Kearny county testified that defendant's brother John reported the fire about noon on the day in question and that he immediately drove out to the scene, which he described. The tractor had been loaded on the truck and both were still burning when he arrived. The truck and tractor were lying down below an embankment some distance from the highway. From conversations had at the scene the witness said he determined that defendant had been driving the truck. The combine was not damaged.

The next witness, a mechanic and also fire chief at Lakin, and who accompanied the sheriff to the scene, quoted defendant as saying that the fire seemed to flash up inside the cab and that as it did so he, the defendant, "stepped out." This witness expressed the opinion that the fire had started either inside the cab of the truck or else under the gasoline tank which was located underneath the seat.

The sheriff, who had been temporarily excused as a witness, was recalled and testified concerning conversations he had with defendant during the course of his investigation of the fire and that on one of these occasions defendant signed a statement which was offered in evidence as exhibit "4." The sheriff testified that it was freely and voluntarily made by defendant; that it was not made as a result of threats or promises, and that it was made and signed by defendant in the presence of several other persons in the sheriff's office. Defendant objected to the introduction of the statement "on the ground it was not a statement made by defendant." In overruling the objection the court commented that defendant's objection was a matter of defense if he wished to show it. The statement, which will not be set out, recited that it was freely and voluntarily made after defendant had been advised that anything he might say could be used against him, and then went on to say that he had poured gasoline on the seat of the truck, set it afire, and then jumped out.

The next witness was the stenographer who took down in shorthand and later transcribed a question-and-answer statement made by defendant in the sheriff's office in the presence of four or five other persons. She testified concerning the circumstances surrounding the taking of this statement, that defendant knew she was taking it in shorthand and that "if he saw I wasn't taking it, part of the time he repeated it for me." Defendant objected to the introduction of this statement, designated as exhibit "5," on the ground there had been no showing that it was made freely, voluntarily and without threats or intimidation. In overruling this objection the court commented that the ground of the objection was a matter of defense if defendant wished to show it.

This statement, which was signed by defendant, related the whole story, commencing with how defendant, his brother and father had gone to the insurance office to purchase insurance, and then recited how he, the defendant, and who was driving the truck, had poured gasoline on the seat, set it afire and then jumped out after steering the truck toward the ditch.

The next witness was a former deputy state fire marshal, and he testified concerning conversations had by him with defendant during the course of the investigation. He also related a conversation had with defendant's brother John, in which John admitted that the three of them "had talked it over" and had decided to burn the equipment and collect the insurance. Defendant's objection to these statements on the part of John, on the ground "it is not relevant to

this case," was overruled. The witness further testified concerning conversations he had with defendant's father, Frank, in which the latter more or less admitted the whole scheme and plan. This witness expressed the opinion that the fire started on the seat in the cab of the truck and that it had been "set."

Three other witnesses, who had been present during the questioning of defendant, testified that all statements made by defendant were made freely and voluntarily and not as a result of threats or promises. Two of these witnesses testified that they saw defendant initial each page and sign the statement heretofore referred to.

The sheriff of Ford county testified concerning certain statements and admissions made by defendant's brother John to the effect that the three of them "had talked it over" and had decided to burn the equipment and collect the insurance. This evidence was objected to by defendant on the ground "it is a statement of John Smith who was not a party to the action." In overruling the objection the court commented that the evidence had shown there was a conspiracy and the statement of John as a coconspirator was therefore admissible.

In his opening statement to the jury counsel for defendant stated that defendant's evidence would show that it was John who was driving the truck, that defendant made no statements to the officers, that he did not sign any statements, and that he would repudiate any purported statements that he did make.

John testified that it was he who was driving the truck; that he did not set fire to it; that the accident and resulting fire were caused by his swerving the truck in avoiding a collision with a gasoline transport truck coming down the highway from the opposite direction; that he never had discussed with defendant and his father any plan to destroy the property and collect the insurance, and that he had never made any such statements to the investigating officers.

The defendant testified that John was driving the truck, and he described how it left the highway as a result of John's attempt to avoid a collision with the gasoline truck. He denied that either he or his brother John had set fire to the truck, denied making the statements and admissions introduced by the state, and further denied his initials and signature on such statements. At the time of trial defendant was twenty-two years of age and had spent almost three years in the military service.

In rebuttal the sheriff of Kearny county testified that when he arrived at the scene of the fire defendant told him that he had been

driving the truck and that his knee and hip were injured when he jumped from it. He further testified that when defendant made a report of the fire he listed himself as being the driver.

The jury found defendant guilty as charged. On March 17, 1952, his counsel filed a motion for new trial. At the hearing of this motion on April 3, 1952, defendant's present counsel participated in the case for the first time. The motion for new trial was overruled and defendant has appealed, alleging error by the lower court in several particulars.

Defendant first complains that the court erred in forcing him to trial without his paid counsel being in attendance and in not granting a continuance so as to give his appointed counsel an opportunity to prepare his defense.

There are several troubles with this contention. In the first place, if the attorney named by defendant as representing him was in fact his attorney it was his business and duty to be in court when the case would normally and properly be called and set for trial, which, as here, was on the first day of the March, 1952, term of court. The record is silent as to why that attorney did not appear. Defendant admitted he had not seen or had any contact with him since December 31, 1951. We do not understand the rule to be that a defendant may thus delay trial, under the circumstances here disclosed, merely by showing up in court without counsel.

In the second place, the record shows a painstaking and conscientious effort on the part of the trial court to safeguard defendant's rights. After it developed that the attorney in question was not available the court appointed counsel for defendant and gave them an opportunity to go over the case. No motion or affidavit for a continuance on the ground of absence of evidence was filed, as provided by G. S. 1949, 62-1414 and 60-2934. It does not appear that defendant and his counsel were in any way taken by surprise by the state's evidence. In fact, at the close of the state's rebuttal evidence the court inquired if there was anything further on the part of defendant, to which his counsel replied:

"No, Your Honor. The defendant informs me that his former counsel had the names of some other witnesses but he has been unable to obtain those names so I don't know who they are. I think the witness' testimony would deal with what happened at the scene of the fire, and I don't know, I don't believe they would be able to testify anything as to who was driving the truck or anything like that and I doubt if they would be material witnesses. That is all."

It has been held many times that the matter of a continuance in a criminal prosecution is largely within the discretion of the trial court, and that its ruling thereon will not be disturbed unless it appears that such discretion has been abused to the prejudice of substantial rights of a defendant. (*State v. Carter*, 122 Kan. 524, 253 Pac. 551, and *State v. Hill*, 145 Kan. 19, 22, 64 P. 2d 71.) No such showing has been made here and defendant's contention in this respect cannot be sustained.

It is next contended the court erred in holding that defendant had the burden of proving that the purported confession was not made voluntarily. We do not so read the record. Preliminary to their introduction the state, in the first instance, introduced evidence that the statements by defendant contained in exhibits "4" and "5" were freely and voluntarily made. The objection to exhibit "4" was that "it was not a statement made by defendant." The objection to exhibit "5" was that there had been no showing that it was freely and voluntarily made. Neither of these objections was well-taken, and the court was correct in stating that defendant could deny the execution of exhibit "4" and could deny that exhibit "5" was freely and voluntarily made, if he wished to do so. Furthermore, the court, in instruction number 7, properly instructed the jury with respect to the consideration to be given these statements in accord with the rule laid down in *State v. Seward*, 163 Kan. 136, 181 P. 2d 478 (on rehearing, 164 Kan. 608, 191 P. 2d 743). In this connection it is noted that at no time did defendant contend, and neither does he now, that the statements were not freely and voluntarily made. He simply denies ever making them.

Next, it is argued the court erred in admitting the statements of John and Frank not made in the presence of defendant, and in failing to instruct on the consideration to be given them. The contention is not well-taken. There was ample evidence to establish that defendant, John and Frank had "talked over" the plan and scheme to burn the property in order to collect the insurance. John and Frank also stood charged with the offense, and their actions and statements as coconspirators were admissible. (*The State v. Shaw*, 108 Kan. 781, 196 Pac. 1100; *State v. Pyle*, 143 Kan. 772, 57 P. 2d 93; and *State v. Addington*, 158 Kan. 276, 147 P. 2d 367.) The record does not show any objection to the instructions given or that defendant requested any further instructions. He therefore is in no position to complain. (*State v. Anderson*, 172 Kan. 402, 241 P. 2d 742.) In view of defendant's own admissions in the nature of a

confession, the absence of a specific instruction as to statements made by John and Frank really became immaterial.

Further, it is contended the court erroneously permitted the former deputy state fire marshal to testify that in his opinion the fire was of incendiary origin. No objection was made to this testimony, but even had there been it would not have been good. The witness qualified himself as an expert on the subject matter, and his testimony was admissible. (*State v. Gore*, 152 Kan. 551, 106 P. 2d 704, 131 A. L. R. 1108.)

Defendant's remaining two specifications of error, that the court erred in admitting any of the purported confessions, and in overruling the motion for a new trial, are answered by what has already been said.

We find nothing in the record approaching reversible error and the judgment is therefore affirmed.

SMITH, J., not participating.