No. 41,860

THE STATE OF KANSAS, *Appellee*, v. JOHN HAMILTON, *Appellant.*

(352 P. 2d 942)

Opinion filed June 11, 1960.

*Kenneth H. Foust* and *John O. Foust,* both of Iola, were on the brief for the appellant.

*Charles F. Forsyth,* of Erie, argued the cause, and *John Anderson, Jr.,* Attorney General, and *Richard L. Ashley,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an appeal from a conviction of burglary and a larceny committed in connection therewith.

On the night of January 9, 1958, the Neosho Valley Cooperative Creamery Association at Erie was broken into and some 3,100 pounds of pecans were stolen therefrom.

Shortly thereafter John Byers, Rex Hamilton and John Hamilton (the defendant here) were charged jointly with burglary and larceny under the provisions of G. S. 1949, 21-520 and 21-524.

We are told that Byers has not yet been placed on trial and that he is now serving a sentence in the penitentiary for another offense.

Separate trials were demanded and granted, and Rex Hamilton was convicted. He appealed to this court and the judgment was affirmed (*State v. Hamilton,* 185 Kan. 101, 340 P. 2d 390). His petition for a writ of certiorari was denied by the Supreme Court of the United States on December 7, 1959 (361 U. S. 920, 4 L. Ed. 2d 188, 80 S. Ct. 265).

The first trial of John Hamilton, hereafter referred to as defendant, resulted in a hung jury. His second trial resulted in a verdict of guilty as charged. The verdict was approved by the trial court and his motion for a new trial was denied. Having previously been convicted of second degree forgery, grand larceny, second degree burglary and larceny of an automobile, he was, under the habitual-

criminal act (G. S. 1949, 21-107a), sentenced to the penitentiary for a period of not less than fifteen years on each of the two charges against him, such sentences to be served concurrently. He has appealed from the denial of his motion for a new trial and from the judgment rendered, and his specifications of error are that the trial court erred in overruling his motion for a new trial and in permitting the state to introduce, over his objection, certain alleged inadmissible evidence.

The following is a brief summary of the state's evidence:

At about ten o'clock on the night in question, January 9, 1958, the manager of the Creamery was driving home to Erie from Fort Scott. A little north of Erie he passed a pickup truck being driven in an erratic fashion and occupied by three men. Later that night he was called to the Creamery and discovered that the front door had been jammed and broken in and that over 3,000 pounds of pecans were missing. He and the undersheriff drove to an address in Chanute at which place a pickup truck identified as belonging to Byers was parked. It was the same truck that he had seen on the highway earlier in the evening.

The chief of police of Chanute assisted in the investigation. He took pictures of tire tracks found in front of the Creamery and also tire tracks at the point where the truck was parked at the Chanute address immediately after the breakin. He testified that in his opinion the tracks were made by the same tires. Byers and the two Hamiltons were "known" to this witness and he questioned defendant about the breakin. Defendant denied knowledge of it but admitted that he and Rex and Byers had been together in Byers' truck on the night in question. He said the three of them had been hunting rabbits but that he was so drunk "he did not remember much about it."

Another witness, a Chanute police officer, had "known" defendant for many years. He was present when the pictures of tire imprints were taken. He searched the Byers truck and in a jacket belonging to Byers he found pieces of string and some clips used in tying burlap sacks. He also found some loose pecans in the glove compartment of the truck. The strings and clips were identified by an employee of the Creamery as being the kind used to tie up the sacks of pecans that were stolen.

Another witness, who operated a place of business across the street from the Creamery, testified that about 10:45 on the night in question he saw the front end of a pickup truck which was the

same color as that belonging to Byers being backed into the darkened Creamery. He later assisted in following the tire tracks from the Creamery to Chanute at which place he saw the truck. Another witness testified that he was at the Creamery corner about 11:15 on the night in question and saw a truck, later identified as belonging to Byers, going west from the scene of the breakin, loaded with sacks which looked like feed sacks. The truck lights were not burning.

Two Chanute police officers testified that shortly after midnight on the night in question they "spotted" the Byers truck and saw it stop at a certain address on North Garfield in Chanute, such being the Roles residence. Byers, Rex and defendant got out of the truck empty-handed. It contained no sacks of pecans.

One Roles, who had been a "hostile" witness for the state at the first trial, was without the jurisdiction of the court, but a transcript of his testimony was read at the second trial. The gist of it was that he had overheard Byers, Rex and defendant talking about pecans and that Byers appeared to be very "interested" in a newspaper account of the burglary and theft. Byers had formerly lived at the Roles home, and upon being told by Roles that if he, Byers, had stolen pecans he, Roles, did not want him around the house. Byers replied that he, Roles, need not worry and that "there was nothing around there."

There also was evidence to the effect that under rather "suspicious circumstances" Byers changed tires on his truck a few days after the breakin.

The undersheriff of Neosho county, and who was in charge of the investigation of the breakin, testified that the Byers truck was "well known" to the law-enforcement officers; that it had been "watched" during the days following the breakin, and that in his opinion the tire imprints found at the Creamery and those in the driveway where the truck was parked in Chanute later that night were the same. He had interrogated both Rex and defendant and they told him they had been drinking on the night in question and that the three of them had gone rabbit hunting in Byers' truck. They told him they had no alibi, had seen no one on the night in question and could not prove by anyone else where they had been.

At his first trial, which, as heretofore stated, resulted in a hung jury, the defendant testified in detail to the effect that during the evening and a portion of the night of the breakin he was in a restaurant in Chanute owned and operated by Mrs. Esta Laymon,

and that Byers and Rex were with him. At that trial Mrs. Laymon testified as an alibi witness and her testimony corroborated in detail that given by defendant.

At the second trial, and with which we are concerned, Mrs. Laymon testified for the state in its case in chief. The substance of her testimony was as follows:

A short time before defendant's first trial she was "approached" by Byers and was persuaded by him to testify as an alibi witness in defendant's behalf. The "story" she was to tell was written down for her by Roles' mother, and she memorized it. Roles was her son-in-law and it was at his home in Chanute where Byers formerly lived and where he had parked his truck shortly after the breakin. She had been paid $20.00 by Roles to testify for defendant at his first trial.

Following the first trial she had "joined the church" and came to a realization that she had sinned in giving false testimony. She went to her minister about the matter and apparently was by him referred to the court and county attorney. She testified that her testimony at the first trial was an unadulterated lie; that defendant, Byers and Rex were not in her restaurant on the night in question, and that she wanted to "come clean" and relieve her conscience. In connection with her agreement to testify falsely at the first trial her contacts had been with Byers and Roles and she had not discussed the matter with defendant, although defendant and his brother Rex had attempted to be "very friendly" with her. As of the time of the second trial she had not been charged with perjury and her "coming clean" had been entirely voluntary on her part.

Defendant did not testify at his second trial, and the only evidence introduced by him concerned the color of the Byers truck.

In this appeal defendant's sole contentions are that much of the evidence was clearly inadmissible against him, although it would be proper as against Byers if and when he is ever placed on trial. Specifically, it is argued that the conversation between Roles and Byers concerning the theft of pecans, the evidence that after the night in question Byers had changed the tires on his truck, and the evidence that pieces of string and clips and loose pecans were found in the truck—all was clearly inadmissible as against defendant. Further, it is contended the evidence concerning the tire imprints was erroneously admitted, and it is argued that in reality it was Byers and his truck who were "tried"—instead of defendant.

One of the troubles with the complaints as to this evidence is that defendant admitted to the officers that he and Byers were together in Byers' truck on the night in question—in fact, they were seen leaving the truck at the address in Chanute where it was parked not long after the breakin. He and Byers were charged jointly with the burglary and larceny, and in view of the entire pattern of circumstantial evidence it cannot successfully be contended that evidence tending to connect Byers and his truck with the offense was inadmissible against defendant. The evidence tended to show that Byers' truck was the one in question, but the weight and probative value of such evidence was of course a question for the jury.

Complaint also is made of the fact that Mrs. Laymon was permitted to testify in the state's case in chief that her alibi testimony given at the first trial was false when it nowhere appeared that it was defendant who had made the "proposition" to her and had paid her money to swear falsely.

In view of the other evidence in the case, we think the introduction of this testimony was not erroneous. Defendant testified in his own behalf in the first trial, and his testimony and that given by Mrs. Laymon in that trial coincided precisely. Inherent in such circumstance is the fact that defendant knew the facts to which Mrs. Laymon was going to testify at that trial, and merely because it was Byers and Roles who propositioned her to testify falsely did not relieve defendant of its consequences. In *State v. Pyle,* 143 Kan. 772, 57 P. 2d 93, it was said:

"What is said or done by any of a group of coconspirators is admissible in evidence not only before their crime is committed, but afterwards, when it tends to show the further prosecution of its related incidents, division of its spoils, or avoidance of its consequences." (p. 780.)

See also *The State v. Mullins,* 95 Kan. 280, 292, 147 Pac. 828; *State v. Addington,* 158 Kan. 276, 283, 147 P. 2d 367; *State v. Smith,* 173 Kan. 807, 812, 252 P. 2d 917, and *State v. Borserine,* 184 Kan. 405, syl. 5, 337 P. 2d 697.

In his brief defendant concedes that no one of his complaints, standing alone, would be sufficient to warrant the granting of a new trial, but that taken altogether, especially in a circumstantial-evidence case, constituted prejudicial error. We are unable to agree. It is quite true that a considerable portion of the evidence concerned "Byers and his truck," but the fact remains that defendant was with him in the truck on the night in question, an entire

pattern of events was established, and if believed by the jury was sufficient to sustain the verdict of guilty.

In conclusion, we wish to state that the record in this case in no way implicates defendant's counsel, Mr. Foust, in connection with the false testimony given by Mrs. Laymon at defendant's first trial, and we are certain that counsel was entirely ignorant of its falsity and is completely innocent of any wrongdoing.

This record has been examined carefully. No objection is made to any of the instructions and we must assume that the jury was properly instructed on all issues. It appears that defendant's rights were properly safeguarded throughout the trial and we find nothing in the record that approaches prejudicial error. The judgment is therefore affirmed.