No. 43,008

STATE OF KANSAS, *Appellee,* v. THOMAS D. YOUNG, *Appellant.*

(375 P. 2d 611)

Opinion filed November 3, 1962.

H. E. Pat Healy, of Wichita, argued the cause and was on the briefs for the appellant.

*John B. Wooley,* deputy county attorney, argued the cause and *William M. Ferguson,* attorney general, *Keith Sanborn,* county attorney, *Lael Alkire,* special prosecutor, and *Melvin M. Gradert,* deputy county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: This is an appeal from a conviction for obtaining money by false or fraudulent pretense in violation of G. S. 1949, 21-551.

The appellant Thomas D. Young seems to be prone to state the issues on the appeal in a more favorable light to himself than we understand the evidence to be. To restate the issues proposed by Young on page 8 of his brief, he states that the evidence fails to establish an intent to defraud and that it is not shown there was any present misstatement of fact but only a misstatement of a future fact. We do not so read the evidence of the prosecution. True, Young's own testimony was that the oil well which he was attempting to sell was of a wildcat nature and no definite statements were admitted.

Howard J. Davidson, Stephen Sturges and Harold D. Brown were witnesses for the prosecution. Davidson testified extensively. According to Davidson, Young first called Davidson on the telephone making arrangements to talk with him and certain friends about selling them an interest in an oil well which he was in the process of drilling in Sedgwick county, Kansas. Mr. Young and a Mr. Keims, who seems to have been an assistant, came to see Mr. Davidson in Yuma, Arizona; they met at the Star Dust Motel by appointment and from there went to Mr. Sturges' office where other men interested in the investment were congregated.

Mr. Davidson and Mr. Sturges testified that Mr. Young told the group of men that he had a well which was drilled down to the Kansas City formation and already had oil which would insure a well of from 100 to 150 barrels a day but that they were going to drill on down to the Mississippian formation to test that out before moving the rig. Mr. Davidson also testified that Mr. Young had a drill-stem test made by the Halliburton Oil Well Cementing Company which showed the facts of the drilling and the presence of oil. The investors were intensely interested and it was arranged for Mr. Davidson to return to Kansas to verify these matters at once. Young and Keims were flying and Davidson took the train. Davidson testified he arrived in Pratt at about 9:30 p. m. He called Young

in Wichita and arrangements were made for Young to pick up Davidson the next morning with a car. The witness then testified as to visiting the drill site; that Young said it was a producing well. Davidson said the well was actually drilling at that time. Davidson does not seem to have talked with the drilling crew a great deal, although he had previously known Harold Brown the driller. Davidson said he asked Brown if they had a well here, and Brown's response was, "Well, yes, a small one."

Davidson said he had a copy of the drill-stem test in the car at the time they visited the well. He further testified that they left the well in about an hour; that they stopped at a gasoline station to buy some gas where Young made a telephone call. He then called Davidson over to the phone and explained to him that he had a young lady on the phone from the Halliburton's office in Great Bend and that she would tell him about the drill-stem test. Davidson then talked with the lady by phone and she verified the matters as shown in the drill-stem test which he had. At the time of the trial, Davidson had lost the copy of the drill-stem test which he had on that day.

Davidson called his friends in Yuma and the deal was closed. The bank in Yuma wired the bank in Wichita that they were sending a check for $12,500 and Young was able to collect part of the money that afternoon, which he used partly to settle Brown's drilling charges. The actual deal was that Mr. Young conveyed a one-quarter interest in the well as follows: To Mr. Sturges, 1/16; to a Mr. Schwark, 1/16; to a Mr. McMillan, 1/16; Mr. Davidson received 1/16 which was paid for and Young also conveyed another 1/16 to Davidson. It was said that Davidson's associates were advised of his additional interest.

As to Harold Brown's testimony, he stated that Young was fully advised of how far the well had been drilled, which was 2,640 feet. This was short of the Kansas City formation. Brown further testified that later when the well was drilled through the Kansas City formation there was only a small show of oil "about like you find anywhere in Kansas City in Kansas." Brown also said that no drill-stem test had been made on the well.

It is quite true that Mr. Young testified quite differently from the prosecution witnesses. But the jury convicted the defendant of fraud. The only objection now appealed from is the denial of the motion for a new trial.

The trial judge has denied the motion for a new trial and approved the verdict (*Posey v. Johnson*, 145 Kan. 742, 67 P. 2d 598). This court did not see the witnesses and has no way to pass upon their veracity.

The judgment appealed from is affirmed.

PRICE, J., dissents.

ROBB, J. (dissenting): I find myself unable to agree with the majority opinion for the reason I believe that regardless of the form of relief sought anyone seeking redress because of fraudulent or false pretenses, or misrepresentations made by another is required to allege and prove that he believed such misrepresentations to be true and that he relied and acted thereupon to his detriment.

The record in this case fails to show reliance by the Arizona residents for the reason they did not, in truth, rely on the statements of defendant Young. Mr. Howard J. Davidson came to Kansas from Yuma, Arizona, for the express purpose of checking the truth and veracity of the statements Young made to the group in Arizona. Mr. Davidson conducted his investigation and the information he received therefrom motivated him to call the other Arizona residents and as a result thereof they sent the purchase price of their interests to Wichita.

While G. S. 1949, 21-551, the statute in question, does not specifically state reliance is an element, in the early case of *State v. Metsch*, 37 Kan. 222, 15 Pac. 251, under the subject of what the state must show in a criminal proceeding for obtaining money under false pretenses, this court made use of the following language:

"To sustain the charge of obtaining money under false pretenses, it is essential to show not only that false pretenses were made, but also that the person who parted with the money *relied* upon the false pretenses made, and that the money was obtained by reason thereof." (Syl. ¶ 3.) (Our emphasis.)

Subsequently, in *State v. Clark*, 46 Kan. 65, 26 Pac. 481, the four elements of the crime were first set out, and this concluding statement then followed:

"They must be the cause, in whole or in part, which induced the owner to part with his property [citations]." (p. 66.)

For numerous later cases on the same subject, see *Todd v. Wichita Federal Savings & Loan Ass'n*, 184 Kan. 492, 494, 337 P. 2d 648; 3 Hatcher's Kansas Digest, rev. ed., Fraud & Deceit, § 19, p. 40;

5 West's Kansas Digest, Fraud, § 46, p. 590, and 1962 Cum. Pocket Part, Fraud, § 46, p. 54.

The opinion of this court in *State v. Handke*, 185 Kan. 38, 340 P. 2d 877, stated:

"It is sufficient if such pretenses contributed to or were a part of the moving cause which induced them to part with their money; each testified they gave the money to defendant in *reliance* upon the representations made by him and that testimony was competent to establish the element of *reliance.*" (p. 45.) (Our emphasis.)

In my opinion the Arizona residents did not rely upon defendant's statements but relied totally upon the report of Davidson after he came to Kansas and made his investigation. I would reverse the judgment and grant a new trial.