No. 44,247

STATE OF KANSAS, *Appellee*, v. WILLIAM SHAW a/k/a BILL SHAW, *Appellant*.

(408 P. 2d 650)

Opinion filed December 11, 1965.

*John F. Stites,* of Manhattan, argued the cause, and *Richard D. Rogers,* of Manhattan, was with him on the briefs for the appellant.

*Donn J. Everett,* Riley County Attorney, of Manhattan, argued the cause, and *Robert C. Londerholm,* Attorney General, of Topeka, was with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a conviction of arson in the second degree.

The defendant, William Shaw, and Larry Sayler were jointly charged in an information with feloniously burning an auditorium belonging to Kansas State University. Both of the boys were students in the department of music which was housed in the building.

It was agreed by counsel, and the court ordered, that the defendants be tried separately. Shaw was tried first and convicted of second degree arson. He has appealed. He makes no complaint of any trial errors in the admission of evidence or instructions to the jury, but contends that the evidence was not only insufficient to prove defendant committed the crime charged but failed to prove that a crime had been committed. His specific complaints are that the court erred in failing to order a discharge at the close of the state's evidence and in failing to set aside the verdict rendered.

The function of this court in reviewing the record for the purpose of determining the sufficiency of the evidence to sustain a criminal conviction is quite limited.

An appellate court will not weigh conflicting evidence. (*State v. McCoy,* 160 Kan. 150, 160 P. 2d 238.) It is the function of the trier of facts, not that of a court of appellate review, to weigh evidence and pass upon the credibility of witnesses. (*State v. Osburn,* 171 Kan. 330, 232 P. 2d 451; *State v. Stout,* 175 Kan. 414, 264 P. 2d 1056; *State v. Russell,* 182 Kan. 649, 323 P. 2d 913; *State v. Gregory,* 191 Kan. 687, 383 P. 2d 965.) A verdict of guilty, when approved by the trial court, must stand if supported by substantial competent evidence. (*State v. Ledbetter,* 183 Kan. 302, 327 P. 2d 1039; *State v. Young,* 190 Kan. 453, 375 P. 2d 611; *State v. Wood,* 190 Kan. 778, 378 P. 2d 536; *State v. Sims,* 192 Kan. 587, 389 P. 2d 812; *State v. Goering,* 193 Kan. 307, 392 P. 2d 930.) Where the sufficiency of the evidence is being reviewed the function of an appellate court is limited to ascertaining whether there was a basis for a reasonable inference of guilt. (*State v. Brizendine,* 114 Kan. 699, 220 Pac. 174; *State v. Fouts,* 169 Kan. 686, 221 P. 2d 841; *State v. Crosby,* 182

Kan. 677, 324 P. 2d 197.) The general rule is, before a verdict approved by the trial court may be set aside on appeal for insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence. (*State v. Ellis*, 192 Kan. 315, 387 P. 2d 198.)

Guided by the above rules we have no difficulty in concluding that there was substantial competent evidence to support the verdict.

The evidence consisted chiefly of the testimony of two students at Kansas State University with whom the appellant and Larry Sayler discussed the burning of the auditorium.

William Wilson testified in substance as follows:

On January 7, 1965, the witness and Ronald Chase were at the Holiday Inn where they were joined by the appellant and Larry Sayler who arrived shortly after 12 midnight. The four youths sat in a booth drinking coffee. Sayler said something to the effect, "How would you like to burn the auditorium?" The witness said, "It sounds great." Sometime during the conversation the witness asked Sayler how he planned to get in the auditorium. Sayler said he had a key to one of the doors. The witness had been a night watchman at the auditorium and he wrote out the rounds of the night watchman on a napkin which he gave to Sayler. Sayler and the appellant left the Holiday Inn at approximately 12:25 a. m. after Sayler had suggested to the witness that they return to the Holiday Inn at 1:00 a. m. the following Friday night to compare newspaper clippings. Sayler and the appellant returned to the Holiday Inn a little after 1:00 on the same evening. The witness asked if "they did it" and Sayler replied, "No, we chickened out."

The night watchman testified that about 12:55 a. m., January 8, he discovered a fire in the basement of the auditorium and extinguished it.

On January 15, 1965, a little after 1:00 a. m. the witness and Ronald Chase were again sitting in a booth at Holiday Inn when they were joined by Sayler and the appellant. Sayler glanced at the clock on the wall and said, "We have been here since 12:20 a. m., haven't we?" As Sayler was sitting down in the booth he stated, "We didn't make it last time because they caught it too soon." Sayler stated that, "We sat in this window until the night watchman left, then we went down to the stage and lit the curtains." Sayler said he "lit them on one side and Shaw lit them on the other" and that they stood back a few minutes to make sure that they were

going good.  The witness told Larry Sayler that he better be quiet about this and the appellant said, "That's right."  Sayler got up and walked away and the witness told appellant that he did not believe that he did it and appellant said something about "you'll find out or you'll see."

The testimony of Ronald Chase was substantially to the same effect as William Wilson's except that he testified:

"A.  Larry Sayler said that 'as we were leaving the auditorium, the curtains sure were going up good.'

"Q.  Did Shaw say anything that you recall?

"A.  As we were—as they were leaving, he said ,that—well, Bill Wilson said, not believing that they started the auditorium on fire, 'you really didn't do it, did you?' and Bill Shaw said, 'well, you'll see' and he also said something about, approximately in the middle of the conversation, 'if you don't believe us, you'll read it in the morning papers.' "

It should be understood that basically the appellant does not make a specific argument to the effect that the evidence does not establish the commission of a crime.  He contends that the damaging evidence consisted of the testimony of third parties as to the admission of a party who was not charged with being an accomplice.  Appellant argues:

"It should be noted that the State did not charge the defendant with aiding or counseling the burning of any building and the jury's verdict was that the defendant was guilty as charged in the Information."

He further argues:

". . . As has been further noted, basically the State's only evidence in this case concerned a conversation between William James Wilson and the said Larry Sayler.  The defendant did not partake in these conversations in any extent and the only evidence the State offered to the jury to convict the defendant was the fact that William Shaw entered the Holiday Inn with Larry Saylor on the two nights of these supposed conversations.  It is respectfully submitted that this is a case of conviction because of association.  Why the State picked out William Shaw to prosecute is a mystery to the defense because the main association and conversation on these two nights took place between Larry Sayler and the witness William James Wilson."

The same argument is made as to the testimony of Ronald Chase:

". . . This witness further testified that defendant took a minor part in this conversation and that he could not attribute any incriminating statements to the defendant."

Where two persons are charged jointly, a specific charge of a conspiracy in the information is not necessary for the purpose of making the admissions of an accomplice or co-conspirator admis-

sible against another. It is sufficient if the evidence establishes the fact. (*State v. Borserine*, post.)

K. S. A. 60-460 (*i*), dealing with hearsay evidence, makes a statement admissible when—

". . . (2) the party and the declarant were participating in a plan to commit a crime or a civil wrong and the statement was relevant to the plan or its subject matter and was made while the plan was in existence and before its complete execution or other termination. . . ."

The above rule of evidence follows the case law previously laid down by this court. The matter was fully discussed in a well written opinion in the case of *State v. Borserine*, 184 Kan. 405, 337 P. 2d 697, where it was stated at page 411:

". . . Evidence of the acts and declarations of the co-conspirators, done and made in the absence of the accused, is admissible so far as it pertains to the furtherance of the common criminal design, to its consummation, to the disposition of its fruits, and to acts done to preserve its concealment, as an exception to the rule against the admissibility of hearsay evidence. (*State v. Emory*, 116 Kan. 381, 226 Pac. 754, and cases cited therein.) The order of proof in such case is largely controlled by the trial judge; and where the crime has to be established by circumstantial evidence the prosecutor must be given permission to present that proof bit by bit as best he can without too rigid enforcement of the rule. If upon completion of the State's case, all the facts tend to show a conspiracy, the order of proof in which the acts of the conspirators are shown is not of much importance. (*State v. Shaw*, 108 Kan. 781, 196 Pac. 1100, and cases cited therein.)" (See, also, *State v. Richmond*, 96 Kan. 600, 603, 152 Pac. 644; *State v. Addington*, 158 Kan. 276, 147 P. 2d 367; *State v. Smith*, 173 Kan. 807, 252 P. 2d 917.)

There is a more all-inclusive reason why the statements of Sayler were admissible against the appellant.

Where an accusatory statement is made in the presence and hearing of a party involving him in a crime and he remains silent, although he has full liberty to speak, his failure to reply is admissible in evidence as an admission of the accused. The rule is covered in Rules of Evidence, K. S. A. 60-460 (*g*), dealing with exceptions to the hearsay rule, which reads:

"*Admissions by parties.* As against himself a statement by a person who is a party to the action in his individual . . . capacity. . . ."

The following statement is found in Gard's Kansas Code of Civil Procedure, p. 475, dealing with the above rule:

"'Statement' as used in this subsection is subject to the definition in section 60-459 which includes nonverbal conduct. Thus under proper circumstances there may be an admission by silence or by other conduct which is the equivalent of spoken words. A good example is where statements are made

in the presence of the party which he would normally be expected to deny if they were not true; and his silence amounts to an admission of the truth."

This again is simply an application of the law existing in this state at the time the Rules of Evidence were adopted. We held in *State v. Cruse*, 112 Kan. 486, 212 Pac. 81, in paragraph 6 of the syllabus:

"Statements of a third party to the prejudice of one accused of crime, made in his presence and which he tolerates without resentment, explanation or denial, are ordinarily admissible as some evidence of his consciousness of guilt." (See, also, *State v. Parks*, 133 Kan. 568, 1 P. 2d 261; 22A C. J. S., Criminal Law, § 734 [1].)

Whether the statements were made within the hearing of the accused and understood by him, and whether there was an opportunity and necessity for their denial are questions for the jury to determine from all of the evidence in the case under proper instructions of the trial court, if requested.

Neither can we agree with appellant's suggestion "that the defendant did not make any incriminating statements." Appellant's statement, "that is right" to Wilson's statement to Sayler that "he had better be quiet about this," and appellant's statement, "if you don't believe us you will find out" when Wilson questioned setting the fire, were certainly incriminating. Such statements were not only incriminating in themselves but they tended to adopt the previous incriminating statements made by Sayler.

An examination of the record discloses sufficient competent evidence to support the verdict of guilty.

The judgment is affirmed.

APPROVED BY THE COURT.