No. 44,833

State of Kansas, *Appellee*, v. Francis W. Emler, *Appellant*.

(430 P. 2d 294)

Opinion filed July 12, 1967.

*William Tinker, Jr.*, of Wichita, argued the cause and was on the briefs for the appellant.

*R. K. Hollingsworth*, Deputy County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, and Keith Sanborn, County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is an appeal from a conviction of arson in the first degree (K. S. A. 21-581).

The defendant, Francis W. Emler, was charged with burning a dwelling house owned by Mary Taylor on July 9, 1965. He was arrested on October 29, 1965, and appeared with his retained counsel, Richard Fox, before a magistrate on November 1, 1965. Defendant was released on bond, and a preliminary hearing was set for November 15, 1965, at which time it was continued until November 29, 1965, and then continued again until December 1, 1965, when the hearing was held. All of the state's principal witnesses testified at the preliminary hearing. The defendant was bound over to district court and again released on bond.

On January 20, 1966, defendant's attorney formally withdrew, although the record shows he continued to represent defendant at least through February 2 when he answered a docket call. Thereafter defendant retained new counsel, the exact date is not shown in the record. On March 7, 1966, defendant through his counsel filed a notice of alibi.

On March 14, 1965, the case was called, and both parties announced ready for trial. The following day the jury returned a verdict of guilty. A motion for new trial was filed, heard by the trial court, and overruled. Thereafter defendant perfected his appeal.

The state's evidence consisted of the testimony of Mary L. Taylor, owner of the burned dwelling house, Robert McCoy, a friend and neighbor of defendant, Kenneth Haivala, who discovered the fire, and Robert McColm, a member of the city fire department. Defendant was the only defense witness at the trial. Alfred Laswell was called as a witness for defendant on the motion for a new trial.

Highly summarized, the evidence discloses that Mary Taylor rented a room in her dwelling house to defendant. That she and defendant had been friends but had a disagreement over money. Defendant had loaned her $600 to help purchase a tavern and then demanded he be made a partner. At this juncture their disagreement became intense. Mrs. Taylor ordered defendant to move from her house but had difficulty ejecting him. She testified that as a result of her refusal to give defendant a one-half interest in the tavern he threatened to break her financially and also threatened her in other respects. She changed the locks on the house, but defendant had keys to two other buildings located on her premises. She described them as a station building and a rock house. The defendant left some of his belongings in those two buildings after he moved. She further testified that because of defendant's continued harassment she tried to get a restraining order but was unable to do so. However, she was given some protection from the police department. She finally had her attorney write defendant ordering him to remove his belongings within six days.

Finally, on July 8, 1965, when defendant went to the Taylor premises to remove his belongings, an argument ensued involving the ownership of some of the property; and two police officers were called. The defendant removed his belongings and left the premises about 8 p.m. that evening. Mrs. Taylor testified that defendant appeared to be "intoxicated and drunk."

McCoy and defendant lived at the same motel. McCoy testified that the defendant arrived at the motel about 9:30 p. m. on July 8 and that he stopped by McCoy's "cabin" and that he was "pretty well loaded." He testified also that defendant said "No, she has wrecked me and I am going to really take her, I am going to burn her out tonight." McCoy further testified:

"Well, he said 'I know where I am going to set it.' And I said, 'Well,' I said, 'Well, you have to get in the house first.' And he said, 'Well, she might have thought she changed all the locks, but I can get in.' So we sat there for a while and I poured him a cup of coffee and then he never drank the coffee. He said, 'I have got to go to the liquor store and get me a bottle of booze before it closes.'"

The defendant left McCoy's cabin and returned in about twenty or thirty minutes and said " 'I got it started' . . . 'I knew right where I was going to set it' . . . 'I will set it underneath the staircasing because that is where she stores all of her papers and paint thinner and paint and rags, and all that stuff' . . . 'I ought to know, I lived there for six or seven months.' "

The defendant left McCoy's cabin again and returned about 12 o'clock. Regarding this occasion McCoy testified as follows:

"And he left a little while—then he left after that and then he came back, 12 o'clock or close, right in there, and he said, 'Man, I never seen such a pretty blue flame.' And I said, 'Man, you are in trouble now.' So then I thought at first it might have been that he was just talking. But then all of a sudden, oh, I would say about 12:20 or 12:30, he came down and he said, 'I can't understand why the fire department don't come around.' And then I began to see through him, that he had said he was going to do—he had done what he said he would do because about 1:20 or so, the fire trucks went right on down the street."

Fire inspector Paul Beard testified for the state. He stated that he arrived at the scene of the fire between 1:45 and 2 a. m., July 9, 1965. He examined the premises and concluded the fire originated beneath the stairway. He testified that it was very definitely a suspicious fire and would have to come from the "human element" because there were no mechanical means at the point of origin which would have caused the fire. In his testimony he eliminated any electrical sources, or any devices or material which would have caused spontaneous ignition at the point of origin. He testified that, based on his experience and training as a fire investigator, he drew the conclusion that the fire was of suspicious nature caused by some human element.

Defendant testified that he had a one-half interest with Mary

Taylor in the M & F Tavern and that the two of them had had considerable financial disagreement. He further testified that he had loaned McCoy some money and that McCoy had refused to pay it back and that McCoy knocked him down one time when he was requesting the money and the automobile license from a car that defendant claimed McCoy had purchased from him.

Defendant further testified that on the evening of July 8, 1965, he was in Al's Lounge, owned and operated by Alfred Laswell, that he left the tavern at ten or fifteen minutes before twelve midnight and went home. He stated that he saw McCoy at about 12:20 a. m., July 9, for the first time that evening.

The state has challenged the defendant's right to be heard on several points raised on appeal because of procedural inadequacies. We have resolved, however, to consider all of the contentions presented.

In his first two points defendant claims he was denied due process and equal protection of the law as guaranteed by the constitutions of the United States and Kansas. In support of his contentions in this regard defendant argues that he was denied sufficient time to prepare his defense. We find his argument entirely refuted by the record. As we have indicated, defendant was represented by retained counsel throughout the entire course of the prosecution commencing with his first appearance before a magistrate on November 1, 1965. The preliminary hearing was continued several times at defendant's request. He sought no continuance from the district court. There is no showing in the record that defendant was denied any procedural matter at any stage of the proceedings.

Defendant argues that given more time for preparation he would have been able to procure the attendance of witnesses to support his alibi. In this connection defendant subpoenaed Alfred Laswell and John Cardinale for the purpose, as he claims, of corroborating his alibi that he was in a tavern the evening of the fire. Laswell was subpoenaed on March 11, 1965, to appear at the trial. Defendant claims now that Laswell could not be located during the trial. A subpoena was issued for Cardinale and returned unserved on January 31, 1966. The record reflects no further effort was made by defendant to procure or enforce the attendance of either at the trial.

Laswell, a tavern owner, testified at the hearing on defendant's motion for a new trial. He testified that defendant was in the

tavern every night but could not testify specifically as to defendant's presence on the night in question. No evidence was offered tending to show that Lasswell purposely or willfully evaded service of a subpoena.

The record discloses that defendant had the assistance of counsel for a period of more than four months in which to prepare for trial. Since no denial of a request for a continuance or for the assistance of the court in securing the attendance of witnesses is shown in the record, the discretion of the trial court is not in anywise put to test. Under the facts and circumstances related we find defendant's claim of denial of due process to be entirely without merit.

Even though defendant did not object to the court's instructions during the trial nor request any different or additional instructions he now complains the court erred in instructing as to reasonable doubt. He claims the court erred in not adequately defining the term and in not instructing separately that each element of the offense must be proven beyond a reasonable doubt.

We believe the trial court adequately defined the term in instruction No. 2 and fairly directed the jury as to its application to the proof required to establish the offense charged. From our consideration of the instructions as a whole, as such is required on appellate review (see *State v. Spohr*, 171 Kan. 129, 230 P. 2d 1013, West's Kansas Digest, Criminal Law, §822; Hatcher's Kansas Digest, Criminal Law, §295), we find them to be sufficient.

Finally, defendant contends the verdict was not supported by substantial evidence. He argues that the state failed to present sufficient corroborative testimony and that the circumstantial evidence presented did not exclude every reasonable hypothesis except that of defendant's guilt. Defendant accurately states the hypothesis within which the case is presented to the trier of facts but the converse is applicable on appellate review. The rule is stated in *State v. Crosby*, 182 Kan. 677, 324 P. 2d 197, 76 A. L. R. 2d 514, as follows:

"Defendant's contention that the circumstantial evidence is insufficient to establish his guilt because such evidence might also be deemed compatible with innocence cannot be sustained. When considering on appeal the sufficiency of circumstantial evidence to sustain a conviction of crime, the question before this court is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That question was for the jury and trial court, and

the function of this court is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt. [Citing cases.]" (p. 685.)

See, also, *State v. Scoggins,* 199 Kan. 108, 427 P. 2d 603, *State v. Gates,* 196 Kan. 216, 410 P. 2d 264; *State v. Ellis,* 192 Kan. 315, 387 P. 2d 198; West's Kansas Digest, Criminal Law, §1144 [13]; Hatcher's Kansas Digest, Criminal Law, §438.

The record here discloses the direct evidence of the fire itself, the *res gestae* statements of defendant corroborated by the circumstances surrounding the fire and the evidence of motive. We believe the evidence sufficient to constitute a basis for a reasonable inference of guilt.

The function of this court in reviewing the record for the purpose of determining the sufficiency of the evidence to sustain a criminal conviction was thoroughly discussed and the rules applicable thereto exhaustively reviewed in *State v. Shaw,* 195 Kan. 677, 408 P. 2d 650.

Guided by those rules we have no difficulty in concluding that there was sufficient competent evidence to support the verdict.

The judgment of the lower court is affirmed.