## Dixon v. Commonwealth.

Oct. 24, 1941.

C. A. Noble and Roger T. Moore for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant and others named in the indictment were charged with murder. Motion for severance was sustained and the commonwealth elected to try appellant. The trial resulted in a finding of guilt, the penalty fixed being confinement for 21 years. On appeal it is argued (1) the court should have sustained appellant's demurrer to the indictment; (2) there was error in admitting incompetent, and rejecting competent evidence, and in admonitions respecting evidence admitted; (3) the court failed to instruct correctly, and the verdict was excessive and the result of passion and prejudice.

The objection to the indictment is based on the

ground that it omitted essentials. The indictment in so far as is pertinent to the discussion, reads:

"The grand jury of Perry County, accuse Manon Dixon of the crime of murder committed in manner and form as follows: The said Manon Dixon * * * on the 11th day of August 1940, in the county and state aforesaid, did unlawfully kill Bradley Bowling, by shooting him, etc."

It is pointed out that Section 123 of the Constitution provides:

"The style of process shall be, 'The Commonwealth of Kentucky.' All prosecutions shall be carried on in the name and by the authority of the 'Commonwealth of Kentucky,' and conclude against the peace and dignity of the same."

The indictment is titled "The Commonwealth of Kentucky, Perry circuit court, September Term 1940." The caption "Commonwealth of Kentucky v. Manon Dixon, indictment for murder," and concludes with the phrase, "against the peace and dignity of the Commonwealth of Kentucky," and is signed by the commonwealth's attorney. As written it omits the words "in the name of and by authority of the 'Commonwealth of Kentucky,'" after the words "Perry County." The court overruled demurrer to the indictment, and in motion for a new trial it was contended that no judgment could be legally entered.

Appellant cites respectable texts which are to the effect that the caption is no part of the finding of a grand jury. 14 R. C. L. p. 163. Further, that good criminal pleading requires that the indictment should begin with words indicating that the prosecution is to be carried on in the name and by the authority of the State, particularly where it is so made mandatory by the Constitution or Statute. 14 R. C. L. 165.

Counsel cites Yeager v. Groves, 78 Ky. 278, which deals solely with the first part of Section 123 of the Constitution, relating to process. We defined "process," and held that the provision was mandatory. Process is not the same as indictment; 32 Cyc. p. 419. Counsel also cites City of Louisville v. Wehmhoff et al., 116 Ky. 812, 76 S. W. 876, 79 S. W. 201 as being in point. We do not find it so, since we merely held there that the

prosecution having been begun in the name of City of Louisville, which under ordinance had power to prosecute, it was unnecessary to restyle it on appeal to the circuit court.

Speaking generally, an indictment consists of the three principal features, (1) the caption, (2) the charge, (3) the conclusion. The first and third constitute the formal portions. The second, or charging part is really the vital portion and the law is strict in requiring the closest observance of established forms and precedents. 27 Am. Jur. 609-35. However in case of Couch v. Com., 281 Ky. 543, 131 S. W. (2d) 781, the conclusion is held to be more than a formal portion. That which is called the caption appears, in cases where we have incidentally discussed the subject, to be a constituent part of the indictment. In Com. v. Young, 7 B. Mon. 1, 46 Ky. 1, we held that if the caption named the commonwealth, the indictment is sufficient, if it concludes "against the peace and dignity of the Commonwealth," without again naming the State.

The precise question here does not appear to have been presented in later years, but as far back as 1810 it was raised in Allen v. Com., 2 Bibb 210, 5 Ky. 210. Objection to the indictment was predicated upon the failure to observe the then constitutional requirement, identical in our present Constitution. On the point raised we wrote:

"Such an expression is however wholly unnecessary. At common law, prior to the revolution, prosecutions were carried on in the name and by the authority of the king, in his political capacity; but the forms of indictment show that it was unnecessary to be expressed to be found by his authority. When we threw off the regal government and adopted the republican form, it became necessary to provide that prosecutions should be carried on in the name and by the authority of the commonwealth; but as under the regal, so under our present form of government, it is equally unnecessary that an indictment should expressly aver by what authority it is found and carried on. This indictment was, as all other indictment must be, carried on by the authority of the commonwealth of Kentucky, and not by the authority of any other power; and that is alone what the constitution requires."

In State v. Thompson, 4 S. D. 95, 55 N. W. 725, 726, the question arose, under precise constitutional provision. In passing on the matter of omission the court said:

> "It will be noticed that the constitution, while providing that the prosecution shall be carried on in the name and by authority of the state, does not provide that it shall be stated in the indictment that it is carried on by authority of the state. If, therefore, the prosecution is in the name of the state, and carried on under the sanction of the proper officer * * *, we are of the opinion that the constitutional provision is complied with."

See, also, Greeson v. State, 5 How., Miss., 33, which cites favorably our Allen case, supra. There is noted a distinction where the Constitution or statutory provision requires that the body of the indictment state that the prosecution has been brought and carried on in the name and by the authority of the State. 27 Am. Jur. p. 610, p. 37.

Since our Constitution does not require more than that the prosecution shall be in the name and by the authority of the Commonwealth, and the indictment and record shows that the prosecution was so begun and carried on, we conclude that the admitted omission from the body of the indictment was not prejudicial. The better practice, however, would be to interpolate the words in the body, and thus avoid the question.

The homicide occurred in the upper end of Perry County on a Sunday afternoon. Appellant admitted the firing of the fatal shot, but claimed that he did so in self-defense. On the day prior to the killing he happened to be in a store and saw Joe Combs buying shotgun shells. Joe was going hunting and appellant conceived the notion that he too would like to go squirrel hunting, and made arrangements to take Combs the next day (Sunday) up to his brothers where they would hunt. Appellant also wanted some work done on his car, so next morning went to pick up Combs, but on account of illness in his family he did not accompany appellant on the hunting trip. Appellant when he left home Sunday morning took a box of shells, loading his Winchester pump gun, five shells in the magazine and one in the barrel.

It is not necessary to detail the travels during the morning or early afternoon; however, at some point in the road appellant met Clyde Callahan driving a car in which it later developed the Bowlings were riding, and stopped long enough for the occupants to speak to each other. Appellant said that after further travel he and his companions finally came to a point where the Bowlings were in the road, 20 or 30 yards away, moving toward the car. Appellant cut his car around to get past them; after he passed the Bowlings began to throw rocks, one striking the car. Appellant became excited, lost control of his car and pulled into a ditch. He got out with his shotgun; the Bowlings were coming toward the car; Bradley with large rocks in his hands. Boone had an ''ordinary pocket knife'' open, and appellant commanded them to stop ''but they came on,'' Bradley saying, ''I'll kill you, you G. D. s. b.,'' and appellant fired, striking and killing Bradley. ''Boone kept coming on and I commanded him to stop, and I throwed up the gun and shot him. Seemed like he might have throwed up his hand.'' Asked the usual specific question, appellant answered: ''I was afraid he was going to kill me. I told him to stop, and I was afraid not to shoot him.'' As far as the proof shows appellant was not drinking. Other witnesses corroborated appellant in the main.

Boone Bowling, chief witness for the Commonwealth, said that he and his brother were driving around in the Callahan car; there was some drinking in this crowd, though no one is shown to have been under the influence of liquor; neither of the Bowlings was armed, except that Boone had a pocket knife, which he says he never had in his hand. The Callahan party, including the Bowlings, had seen the Dixon party at one point in their travels, and there is some proof of minor trouble between the Bowlings, or one of them, with another party who was not in the later Dixon crowd. There is no showing of previous difficulty between Dixon and the Bowlings, though it is said there had been previous ill-feeling.

Boone said that he and Bradley had started with Callahan to go to work and to take along a companion. They had passed Creech's home and gotten to Puncheon Camp. They decided to go back to Creechs, where they got some tomatoes, and went to the road to wait for

young Callahan to return. They sat down and the Dixon car came down the road and passed the Bowlings. In about 25 minutes the Dixon car came back. The Bowlings were sitting on the side of the road, eating tomatoes. They "flagged" the Dixon car "for a ride back down the road." Dixon's car slowed down, and the Bowlings started toward the car, Pratt in the rumble seat began pulling at the shot gun; Dixon jumped out, grabbed the gun and shot Bradley; Boone turned and Dixon shot him. He says that Bradley had a tomato in his hand, and he (Boone) had a piece of tomato in each hand. Both the Bowlings were in their shirt sleeves. Their testimony to some extent is corroborated by persons who saw the killing.

There is no serious complaint that the evidence was insufficient to take the case to the jury, or that the verdict is flagrantly against the evidence. It is just another one of those numerous homicide cases in which the accused admits the act, and endeavors to avoid, claiming self-defense, which as we observe, was fairly brought to the jury in an instruction correct and complete in form and substance.

We have so often written to the effect when the defense for the act is fear of death or injury, it becomes incumbent on the accused to present such proof as will reasonably convince the jury that the act was committed in good faith, and no more force was used than necessary to avert the impending danger, that it is unnecessary to refer to cases embodying the principle.

Coming now to the specific contentions of appellant, not above noted, we find that counsel complains because the court required appellant, over objection, to answer commonwealth's question, "You didn't attend church that day did you?" His answer was, "No, I didn't." Counsel says this was prejudicial. We do not think so. It was irrelevant; it had no bearing on the issue, and was asked for no good purpose.

It is noted that in detailing his actions of the morning appellant said that he had gone to the "mouth of Leatherwood, where church was going on," and it was clear to the jury that he left on another mission and did not attend church. When appellant was testifying on cross-examination as to the occurrences at the time of the shooting, he was asked, "Could you have gone and

left the car?" to which, over objection, he answered, "I could have run on and left my car." It is argued that from this colloquy it was "implied that appellant should have run away from the Bowlings, instead of defending himself," and that the jury might have formed such an idea. Appellant had the moment before testified that neither of the Bowlings was armed (with other than rocks) and that he would not "take a chance of getting the car out" and going down the road; this without objection. While this, perhaps, was another question that should not have been asked, we must give the jury some credit of having intelligence enough to conceive the meaning of the instruction which told them in effect that accused had the right to shoot and kill if he at the time believed himself in danger of death or bodily harm.

It is next argued that certain admonitions in respect of admitted testimony were so erroneous as to prejudice or mislead the jury. Charlie Pratt was indicted jointly with appellant, who was being tried alone on his motion. He was testifying for appellant about something that had occurred at Minnard's store earlier in the day, when the accused was not present. The Bowlings were there; Ed Lawson had a shotgun. He says Bradley Bowling pointed the gun at him and snapped it, and Boone jerked a knife on Lawson. Nothing came of this, and it is in the proof that the gun was not loaded. Nothing was said about "the Dixons" when he was telling that Bradley punched Lawson with the gun. There was objection, and the court stated to the jury:

"You won't consider the statements of the past two or three questions and answers as substantive evidence in this case. You are permitted to receive it for the purpose of throwing light on the transactions charged in the indictment, if in your opinion it does throw light on the transactions only, and for the purpose of affecting the credibility or weight of the witness Bowling, if in your opinion it does affect that evidence."

Bowling had given a different version of the Lawson transaction which had occurred prior to the shooting, and with which it had no connection. The purpose, perhaps, was to show the state of mind of Bradley Bowling. However that may have been, while the court told

the jury the "last few questions" (to only one of which there was objection) were not to be taken as "substantive" evidence, they were nevertheless to receive proof for any light it threw on the transactions, if in their opinion it threw light.

The jury may not have understood what "substantive" meant, but they understood the remaining portion of the admonition. Since the jury generally determines whether or not the "evidence throws light," there was no prejudicial error here. The same may be concluded as to the testimony by Cecil Pratt, with a like admonition, likewise to the same character of testimony by Ed Lawson concerning the same episode.

Counsel treats the ruling of the court as excluding the testimony, and cites cases wherein we have held that error was committed by the exclusion of otherwise competent testimony. While it is not necessary to rule on the question of competency or incompetency of the questions and answers, we conclude that though the admonition was improperly framed it was not prejudicial.

We have examined the instructions and find them to be correct in form and substance. It is argued that in giving instruction No. 2, combined murder and manslaughter instruction, which told the jury to find defendant guilty if they believed from the evidence beyond a reasonable doubt that accused shot and killed "not in the necessary or to him reasonably apparent necessary defense of himself," the court did not incorporate the name of Boone Bowling, who was acting in concert with Bradley.

Counsel overlooks instruction No. 4, which told the jury that accused had the right to shoot and kill Bradley, if at the time he had reasonable grounds to believe, and believed that either Bradley or Boone Bowling was about to inflict death or great bodily harm upon him or any one of his companions. There was no error, substantial or otherwise here.

A close reading of the record fails to demonstrate to us that any prejudicial error was committed. On the other hand we conclude that accused was afforded a fair trial.

Judgment affirmed.