(577 P.2d 803)
No. 48,877

STATE OF KANSAS, *Appellee,* v. MARSHALL AND BROWN-SIDOROWICZ, P.A., a Kansas Corporation, and NORBERT J. SIDOROWICZ, *Appellants.*

Petition for review denied June 15, 1978.

Opinion filed April 14, 1978. 

*Robert D. Hecht,* of Scott, Quinlan & Hecht, of Topeka, for appellants.

*Mark L. Bennett, Jr.,* Special Assistant District Attorney, *Curt T. Schneider,* Attorney General, and *Gene M. Olander,* District Attorney, for appellee.

Before ABBOTT, P.J., REES and SPENCER, JJ.

REES, J.: This is an appeal by defendants from convictions for conspiracy to commit bribery as defined by K.S.A. 21-3302 and K.S.A. 21-3901. We affirm.

The prosecution of these defendants arises out of the award by the State of Kansas in March, 1972, of an architectural contract for expansion of the Kansas University Medical Center in Kansas City, Kansas. Defendant Sidorowicz is an architect and officer of the corporate defendant, Marshall and Brown-Sidorowicz.

The award of the contract was the subject of an investigation by then Attorney General Miller in the autumn of 1973. Initially, Miller's investigation produced no evidence of wrongdoing and a statement was issued to the Kansas House of Representatives indicating no impropriety had been found. However, after issuance of the statement, Miller had a conversation with Robert Brandt, whose role will be later described, during which Brandt stated that a political payoff was involved in the award. Statements of Brandt and Kenneth McLain, whose role also will be later described, led to the impaneling of a grand jury in Shawnee County and indictments.

On January 22, 1974, the grand jury returned an indictment in which eighteen individuals and five corporations were charged with conspiracy to commit bribery. The indictment alleged that the defendants had conspired to bribe Richard Malloy, appointments secretary for then Governor Robert Docking. Three individuals were named as unindicted co-conspirators. A separate indictment charged Malloy with bribery.

Each defendant charged, including these two, appeared before the District Court of Shawnee County for arraignment, pleaded not guilty, and posted bond. Sidorowicz filed a personal recognizance bond on May 8, 1974.

By special legislation, the 1974 Kansas Legislature authorized, and appropriated funds for, the appointment of a special prosecutor to handle all criminal proceedings arising out of the grand jury indictments. Chapter 22, 1974 Session Laws. Pursuant to the statutory authorization, a special prosecutor was selected by the Shawnee County District Attorney without the approval of the Shawnee County Commissioners.

Following the posting of bond, the defendants filed various motions attacking the sufficiency of the indictments, the jurisdiction of the district court, the grand jury selection process, and a variety of other matters. Several of the motions challenging the indictments and the jurisdiction of the district court were denied. A judge *pro tem* was assigned to hear and determine defense motions that alleged illegality in the selection of the grand jury. These latter motions were sustained and the indictments. were dismissed. The State appealed the dismissal and the defendants cross-appealed from adverse rulings by the district court on their other motions.

In *State v. Campbell,* 217 Kan. 756, 539 P.2d 329, *cert. den.* 423 U.S. 1017, 46 L.Ed.2d 389, 96 S.Ct. 453 (1975), it was ruled that the grand jury selection procedure employed in Shawnee County was valid and dismissal of the indictments was reversed. On the cross-appeals, the district court rulings as to the sufficiency of the indictments, the jurisdiction of the district court, and other matters were affirmed. The cases were remanded to the district court for further proceedings.

The three unindicted co-conspirators named in the grand jury indictments were granted immunity and were witnesses for the State. Some defendants were tried and acquitted; the charges against others were dismissed. At the time of the trial of these two defendants, only one indicted defendant, Marshall & Brown of Kansas, a corporation, had been found guilty and that was upon a plea of *nolo contendere.* The defendants in this case were the last to come to trial. After lengthy testimony, a jury verdict of guilty as to both defendants was returned on January 16, 1976.

The evidence at trial indicated that as early as July, 1970, a proposed expansion of the Medical Center was under consideration. The architectural firm of Kivett & Myers was employed by the Medical Center to perform preliminary work. The proposed project cost was $50 million. There was considerable interest

within the architectural community as to the award of the architectural contract for the planning phase of the project.

McLain, one of the unindicted co-conspirators, was a partner of Sidorowicz immediately preceding McLain's appointment to the office of State Architect by Governor Docking in November of 1971. After his appointment, several firms, including Kivett & Myers and the defendant Marshall and Brown-Sidorowicz, contacted McLain expressing interest in the project.

Marshall and Brown-Sidorowicz was a corporate association or "team" of architectural firms organized for the purpose of procuring and performing the Medical Center contract. Sidorowicz was president and Frank Fisher, an architect and another of the three unindicted co-conspirators, was secretary-treasurer. One-half of its stock was owned by Marshall & Brown of Kansas, and the other one-half was owned by Sidorowicz. Fisher was chairman of the board of Marshall & Brown of Kansas at his retirement in 1973.

"Dick" Docking (hereafter "Docking") is the brother of then Governor Docking and was treasurer of his brother's 1972 gubernatorial campaign. Docking was one of the defendants indicted by the grand jury. The charges against him were among those dismissed.

In late 1971, Fisher and other principals of Marshall & Brown of Kansas met with Docking in Docking's office in Kansas City. Fisher and the others informed Docking that they were putting together a "team" that included Sidorowicz to procure the architectural contract for the Medical Center project. During the conversation, Docking indicated that his brother would be running for re-election and that there would be a need for contributions. One of the participants at the meeting assured Docking that "we could be expected to help in that sort of thing." Fisher came out of the meeting with the impression that a contribution would be required if the "team" was to get the contract.

In December of 1971, McLain met with Docking at the Victory Hills Country Club in Kansas City, Kansas. Docking suggested the firm of Marshall and Brown-Sidorowicz for award of the contract.

Meetings were held in February and March, 1972, for a presentation by the principal members of the Marshall and Brown-Sidorowicz "team" to state officials involved in the appointment

of associate state architects and the contracting for architectural services. Neither Kivett & Myers nor any other architectural firm was given an opportunity to make a presentation.

In March, 1972, McLain had a conversation with Malloy. As a result of the conversation, McLain made a telephone call to Sidorowicz and told him "it would be advantageous to consider this $30,000 political contribution in relation and in connection with the work at K. U. Med Center." The $30,000 figure was six percent of the $500,000 architectural fee for the planning phase of the project. McLain testified that Sidorowicz did not appear surprised by McLain's statement, nor did he refuse to pay the amount.

A meeting took place at the Townhouse Hotel in Kansas City, Kansas, on March 21, 1972. According to the State's evidence, this meeting was a crucial event in its proof of the conspiracy. In attendance were McLain, Docking, Malloy, Fisher, Sidorowicz, Brandt, and other members of the "team." Brandt, then director of the Kansas Department of Administration, was shown by the evidence to have played an important role in the letting of state architectural contracts and was the third unindicted co-conspirator.

Fisher testified that during the Townhouse Hotel meeting Sidorowicz asked him, "What do you think we'll get this for?" Fisher responded that he would not be surprised at ten percent. Sidorowicz then said, "No, we'll get it for six . . ." Fisher understood Sidorowicz' statement to mean that the "team" would have to make a total contribution of $30,000 in order to get the contract. Sidorowicz also informed Fisher that ten percent of the total contribution, or $3,000, would have to be produced in cash that day. Fisher told Sidorowicz he did not have the cash with him, and Sidorowicz indicated Fisher could pay his share later. Sidorowicz then said he had to cash a check and left the meeting. Testimony of McLain and Brandt tended to confirm Fisher's testimony that Sidorowicz left the Townhouse meeting to go to his bank to get the $3,000. Brandt testified that Malloy referred to the money obtained by Sidorowicz as "good faith money."

The State produced evidence that Sidorowicz drew a check for cash upon the Kaw Valley State Bank in Kansas City on March 21, 1972, in the amount of $3,000.

Brandt testified that he returned by car to Topeka with Malloy

and McLain after the Townhouse Hotel meeting, and when he asked Malloy if he got the money, Malloy grinned and held up three fingers.

On March 23, 1972, two days later, State Architect McLain formally recommended to Governor Docking the appointment of Marshall and Brown-Sidorowicz as associate state architects for the planning phase of the Medical Center project. The recommendation was approved by Director of the Department of Administration Brandt, and the firm then was formally appointed by the governor.

There was substantial evidence in the record that Malloy played a significant role in the appointment of associate state architects and the award of state architectural contracts. McLain testified that Malloy was the person in the governor's office with whom he always talked concerning architectural contracts and that Malloy was, in effect, the representative of the governor as to such matters.

Shortly after the Townhouse Hotel meeting, discussions were held between Sidorowicz, Fisher, and other principals of the "team" as to how the payments to Malloy were to be made. It was agreed that the amount of the payments would be proportionate to the fees received. The contract provided that the architects were to be paid in installments as work was completed.

McLain testified that after the "team" received a payment from the State, he would receive a telephone call from Malloy, and, as a result of his conversation with Malloy, he would call Sidorowicz in Kansas City. McLain would tell Sidorowicz a further contribution was needed proportionate to the payment by the State, and that it should be delivered to McLain's apartment in Kansas City, Kansas. McLain and Malloy would then drive to Kansas City and, pursuant to the instructions given to Sidorowicz over the telephone, receive the money at McLain's apartment.

Fisher testified that after the "team" received the first installment of their fee from the State, he received a telephone call from Sidorowicz in which he was advised that a payment should be made at McLain's apartment in Kansas City, Kansas. Fisher then notified members of the firm of Marshall & Brown of Kansas and collected their shares of the payment to be made to Malloy. The payment was then delivered in cash to McLain's apartment. After subsequent installments were paid by the State, Fisher received

telephone calls from Sidorowicz informing him that further contributions were required, and advising him as to when and where the payments were to be made. Apparently, the last payment on the six percent contribution was collected and paid in December, 1972.

All payments made to Malloy by Sidorowicz, Fisher and the other members of the "team" were in cash. With one immaterial exception, the official financial reports filed with the Secretary of State by Governor Docking's various campaign organizations revealed no contributions made by either these defendants, Fisher, or any of the principals of the architectural "team."

On appeal defendants raise nineteen separate points. Most are argued on multiple contentions.

1. Defendants' first contention is that the district court lacked both subject matter and personal jurisdiction.

First, the defendants argue the omission of the name of the State of Kansas from the captions of the grand jury indictment and the summonses was a jurisdictional defect fatal to subsequent prosecution. The first assertion of this argument shown in the record occurred after trial.

The failure to include the name of the State of Kansas in the captions of the indictment and summonses was not a fatal defect. It is the body of the indictment rather than its caption that is important. If the body specifically states the essential elements of the crime and is otherwise free from defect, defect in the caption will not cause it to be invalid. 41 Am. Jur. 2d, Indictments and Informations § 45, p. 905. Misnomers, mistakes, and omissions in the caption of an indictment have been held to be not fatal to prosecution thereunder. *State v. Tauscher,* 227 Or. 1, 360 P.2d 764, 88 A.L.R.2d 674 (1961); *Stillman v. United States,* 177 F.2d 607 (9th Cir. 1949); *State v. Rolph,* 140 Minn. 190, 167 N.W. 553 (1918). Our Supreme Court held in *State v. Bland,* 91 Kan. 160, 163-164, 136 Pac. 947 (1913), the omission from the title of an indictment of a statutory designation was not, in that case, a material omission requiring reversal.

K.S.A. 22-2104 provides that "[a]ll prosecutions for violations of the criminal laws of this state shall be in the name of the State of Kansas." We conclude the statute does not require the name of the State of Kansas be included in the captions of the indictment and summonses in the present case. In absence of constitutional

or statutory provisions on the subject, a formal statement in the indictment that the prosecution has been brought and is being carried on in the name and by the authority of the State is not necessary if this fact appears elsewhere in the record. 41 Am. Jur. 2d, Indictments and Informations § 48, p. 907. The purpose of K.S.A. 22-2104 is to protect the people of this state from private prosecutions which might degenerate into persecutions, and from prosecutions by any foreign power or a sovereignty other than this state. *Caples v. State,* 3 Okla. Crim. 72, 104 Pac. 493 (1909). The statute directs that the state, in its name and by its authority, shall control a prosecution. It does not require that the indictment or summons say on its face that the action is "prosecuted in the name and by the authority of the state." *State v. Thompson,* 4 S.D. 95, 55 N.W. 725 (1893); *Savage and James v. State,* 18 Fla. 909 (1882). See, also, *Dixon v. Commonwealth,* 288 Ky. 57, 155 S.W.2d 455 (1941); *Monroe v. State,* 56 Tex. Crim. 444, 120 S.W. 479 (1909).

Defendants' reliance upon *State v. Farmers Union Cooperative Association,* 170 Kan. 171, 223 P.2d 747 (1950), is misplaced. When that case was decided, Kansas had a specific statute requiring that all indictments and informations contain the names of the parties. G. S. 1935 62-1004. That statute was repealed in 1970 upon enactment of the new criminal code and was not in effect when the indictment and summonses were issued in the present case. Further, in *State v. Farmers Union Cooperative Association,* supra, the Supreme Court noted that the fact the prosecution was in the name of the State of Kansas did not appear from any pleading filed in the case. (p. 172.) In the present case, although the name of the State of Kansas does not appear in the caption of the indictment or the summonses, the omission is supplied in other pleadings filed.

If we were to hold that the omission of the name of the State of Kansas from the caption of the indictment and summonses was a defect, it would be a defect of a formal or technical nature and not jurisdictional. Objections to an indictment or information based on formal and unsubstantial defects ordinarily will be deemed to have been waived if not timely raised. 5 Am. Jur. 2d, Appeal and Error § 599, p. 64. Complaints relating to formal defects in an information, indictment, complaint or warrant are waived in a criminal action by not objecting thereto in some appropriate

manner in the preliminary stages of the proceeding. *State v. Yowell,* 184 Kan. 352, 354-355, 336 P.2d 841 (1959); *State v. Toliver,* 109 Kan. 660, 202 Pac. 99 (1921); *State v. Addington,* 205 Kan. 640, 472 P.2d 225 (1970); *State v. Barry,* 183 Kan. 792, 332 P.2d 549 (1958); *State v. Dye,* 148 Kan. 421, 83 P.2d 113 (1938); *State v. Edwards,* 93 Kan. 598, 144 Pac. 1009 (1914). Here, defendants raised no objection to the form of the indictment or summonses until after trial, nearly two years after the commencement of the prosecution.

K.S.A. 22-2306 specifically provides that "[a] warrant shall not be quashed or abated nor shall any person in custody for a crime be discharged from such custody because of any technical defect in the warrant." Although the statute refers to a warrant, we hold it applicable to a summons.

The omission of the name of the State of Kansas from the indictment and the summonses, not constituting a jurisdictional defect, was a matter waived by the defendants for failure to raise timely objection.

Second, defendants question the service of the summonses upon them. Three reasons are advanced as to why the service was improper: (1) Each summons was directed to the Sheriff of Wyandotte County but was served by a specially appointed process server; (2) the affidavit of service does not show the time of service as required by K.S.A. 60-312(*a*)(2); and (3) the special process server was without authority because he served the summonses prior to his appointment.

The alleged defects raised by defendants do not relate to subject matter jurisdiction. Defects that concern jurisdiction of the person may be waived by a defendant who appears in court, pleads, posts bond, and fails to make seasonable objection. *State v. Addington,* supra; *State v. Barry,* supra; *State v. Munson,* 111 Kan. 318, 206 Pac. 749 (1922); *State v. Grady,* 147 Kan. 268, 76 P.2d 799 (1938).

Where a summons addressed to the sheriff of one county is served by the sheriff of another county, the service is defective and subject to timely objection. *Finn, Administratrix v. Veatch,* 195 Kan. 410, 407 P.2d 535 (1965); *Branner v. Chapman,* 11 Kan. (2d ed.) *118 (1873). However, such defective service may be waived where a defendant appears, submits himself to the jurisdiction of the court, and fails to raise a timely objection. *Home*

*Owners Loan Corp. v. Clogston,* 154 Kan. 257, 259, 118 P.2d 568 (1941).

Defendants have similarly waived their other two arguments.

K.S.A. 22-3208(4) provides that "[a] plea of guilty or a consent to trial upon a complaint, information or indictment shall constitute a waiver of defenses and objections based upon the institution of the prosecution or defects in the complaint, information or indictment other than it fails to show jurisdiction in the court or to charge a crime." If defendants had any meritorious objections to personal jurisdiction, they were waived by the entry of plea, posting of bond and submission to the jurisdiction of the trial court without assertion of such objections until after trial. *State v. Lucas,* 221 Kan. 88, 557 P.2d 1296 (1976).

2. Defendants next argue no prosecution was properly commenced and the statute of limitations has since run, barring any future prosecution. Defendants' argument rests upon two contentions: (1) No warrants were issued for defendants and the district court did not order that summonses issue instead of warrants; and (2) a summons is not sufficient to toll the statute of limitations (K.S.A. 21-3106[5]).

The record on appeal does not include an order of the district court that summonses issue instead of warrants. The summonses issued each bear the signature of a judge and the clerk of the Shawnee County District Court. The summonses properly commenced the prosecution of this action and, if it be material, served to toll the statute of limitations.

K.S.A. 22-2303(1) states that "[w]hen an indictment is returned, as provided by section 22-3011, a prosecution shall be deemed to have begun. . . ." K.S.A. 22-2303(2) provides that when an indictment is filed a warrant for the arrest of the defendant shall issue; however, the court may order that a summons issue instead of a warrant. A summons may be signed either by the magistrate or the clerk of his court. K.S.A. 22-2304(2).

The record establishes that an indictment was duly filed and summonses were issued thereon. The absence of a written order by a judge of the Shawnee County District Court ordering that summonses issue instead of warrants does not invalidate the subsequent service of process. We cannot and will not presume that summonses were issued by the clerk without proper authority from the district court. Public officials presumably will per-

form their duties in a rightful manner and will not act improperly. *Lyerla v. Lyerla,* 195 Kan. 259, 403 P.2d 989 (1965); *State, ex rel., v. Fadely,* 180 Kan. 652, 308 P.2d 537 (1957); *Lewis v. City of South Hutchinson,* 162 Kan. 104, 174 P.2d 51 (1946).

However, even if we determined, which we have not, that the manner of issuance of the summonses was defective, defendants have waived the defect by failure to raise timely objection. K.S.A. 22-3208(4); *State v. Addington,* supra; *State v. Barry,* supra; *State v. Munson,* supra; *State v. Grady,* supra.

We cannot agree with the defendants' contention that the issuance of a summons does not satisfy K.S.A. 21-3106(5) with respect to tolling the statute of limitations. Although that statute speaks only in terms of the issuance of a "warrant," an interpretation of K.S.A. 21-3106(5) that would limit commencement of a prosecution to the filing of a complaint, information or indictment, and the issuance of a warrant, to the exclusion of a summons, is patently unreasonable and would defeat the clear legislative intent of K.S.A. 22-2302 to provide an alternate form of criminal process. A criminal prosecution, commenced by the filing of a complaint, information or indictment, upon which summons is issued pursuant to K.S.A. 22-2302, has been properly commenced for the purposes of K.S.A. 21-3106(5) and the statute of limitations is tolled.

3. Defendants argue the proceedings were conducted on behalf of the State by one who had no authority to act as special prosecutor. We have examined defendants' argument and find it without merit. The authority of the special prosecutor did not expire by operation of law at the end of fiscal year 1975. Chapter 22, 1974 Session Laws, which authorized the appointment of a special prosecutor for Shawnee County, provided that the special prosecutor was "to assist in the prosecution of indictments returned by any grand jury impaneled in Shawnee County and any criminal proceedings having any relation thereto . . ." The special prosecutor's authority continues as long as criminal proceedings continue. The record discloses that the contract between the special prosecutor and the district attorney was approved by the Legislative Budget Committee as required by the special legislation. The fact that the appointment of the special prosecutor was not approved by the Shawnee County Commissioners is irrelevant. The legislature specifically exempted the appointment

of this special prosecutor from the requirement of approval by the County Commissioners found in K.S.A. 22a-106(*d*). The fact that the special prosecutor appointed was not a regularly employed assistant county attorney and continued to engage in the civil practice of law did not destroy his authority to act as special prosecutor. The special legislation provided that "said special assistant shall not be prohibited from engaging in the civil practice of law . . ." Further, K.S.A. 22a-106(*d*) exempts a special prosecutor from the restriction that assistant district attorneys not engage in the civil practice of law.

4. Defendants argue that in his closing argument the special prosecutor went beyond the bounds of fair comment upon the evidence by repeatedly commenting upon the uncontroverted nature of some of the State's evidence and the failure of the defendants to produce evidence. It is said the State's argument was a gross deviation from prosecutorial standards and constituted comment upon the failure of defendant Sidorowicz to take the stand and testify.

The record reveals defendants made no objection during the State's argument. Defendants' counsel elected to wait until after the special prosecutor had concluded and then orally lodged a general motion for mistrial for improper comments. No request was made to admonish the jury to disregard the allegedly improper remarks. Under such circumstances, we must conclude the defendants waived this claim of error concerning the closing argument.

Reversible error generally cannot be predicated upon a complaint of misconduct of counsel in opening or closing argument where no contemporaneous objection is lodged. *State v. Johnson,* 210 Kan. 288, 297, 502 P.2d 802 (1972); *State v. Arney,* 218 Kan. 369, 374, 544 P.2d 334 (1975); *State v. Anicker,* 217 Kan. 314, 536 P.2d 1355 (1975); *State v. Murrell,* 215 Kan. 10, 523 P.2d 348 (1974); *State v. Newman,* 213 Kan. 178, 515 P.2d 814 (1973); *State v. Jones,* 137 Kan. 273, 279, 20 P.2d 514 (1933).

Defendants' reliance upon *State v. Gordon,* 219 Kan. 643, 549 P.2d 886 (1976), to justify their failure to make timely objection is misplaced. There the results of a blood alcohol test were admitted as evidence. The defendant did not object until after the trial was concluded. It was held that the contemporaneous objection rule need not be strictly applied so as to preclude consideration of the

defendant's objection. The trial in *Gordon* was to the court. One factor which governed the decision on appeal was the fact that "no jurors had been swayed by the improper evidence . . . ." (p. 652.) In the present case the trial was to a jury and the jurors had already heard the special prosecutor's closing argument in its entirety before the defendants raised their objection. The need for timely objection in a jury trial is significantly greater than in a trial to the court as in *Gordon.* If defendants had raised an early and timely objection to the State's closing argument, the remarks could have been stricken if they were improper, the jury admonished to disregard the comments, and further prejudice avoided.

We cannot accept defendants' argument that contemporaneous objection is not necessary to preserve the issue for appellate review where there has been "plain error." Failure to comply with the contemporaneous objection rule may bar a challenge, even upon federal constitutional grounds, to a conviction in a state court. Kansas does not follow the "plain error" rule utilized in the federal courts. *State v. Fisher,* 222 Kan. 76, 83-84, 563 P.2d 1012 (1977).

Even if the defendants in this case had preserved their objection for appellate review, we could not uphold their position. The trial court found the statements made by the special prosecutor were in the realm of fair comment. We agree. The test as to whether a comment made by a prosecutor constitutes an improper reference to a defendant's failure to testify is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955); *State v. Carpenter,* 215 Kan. 573, 576, 527 P.2d 1333 (1974). Having reviewed the entirety of the special prosecutor's closing argument, we conclude that none of the alleged improper remarks were manifestly intended as or of such a character that the jury would naturally and necessarily take them to be comments on the failure of the accused to testify. Our conclusion is based upon consideration of the challenged remarks individually and collectively.

5. Defendants say the district court erred in admitting testimony of extra-judicial statements made by various alleged co-conspirators without first presenting evidence of a conspiracy and without giving proper cautionary instructions.

As to the necessity of presenting evidence of a conspiracy prior to admission of hearsay evidence under the co-conspirator exception to the hearsay rule, K.S.A. 60-460(*i*), *State v. Borserine*, 184 Kan. 405, 337 P.2d 697 (1959), is determinative. There the Kansas Supreme Court said in part:

"A conspiracy may be established by direct proof, or circumstantial evidence, or both. Ordinarily when acts and declarations of one or more co-conspirators are offered in evidence against another co-conspirator by a third party witness or witnesses, the conspiracy should first be established *prima facie,* and to the satisfaction of the trial judge. But this cannot always be required. Where proof of the conspiracy depends on a vast amount of circumstantial evidence—a vast number of isolated and independent facts—it cannot be required. In any case where such acts and declarations are introduced in evidence, and the whole of the evidence introduced at the trial taken together shows that a conspiracy actually exists, it will be considered immaterial whether the conspiracy was established before, or after, the introduction of such acts and declarations. (*State v. Winner,* 17 Kan. 298.)" (Syl. 4.)

In the present case, the whole of the evidence introduced at trial, taken together, clearly showed that a conspiracy existed and it is immaterial whether the conspiracy was established *prima facie* before or after the introduction of the hearsay evidence.

Defendants rely upon the decision of the United States Supreme Court in *Lutwak v. United States,* 344 U.S. 604, 97 L.Ed. 593, 73 S.Ct. 481 (1953), and other federal decisions stemming therefrom, to support their argument that a cautionary instruction should have been given to the jury prior to the admission of any hearsay evidence under the co-conspirator exception to the hearsay rule.

Our review of the record fails to locate any timely objection by defendants to the trial court's failure to give a cautionary instruction, and defendants have referred us to none. No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires, stating distinctly the matter to which he objects and the grounds of his objection, unless the instruction was clearly erroneous. K.S.A. 60-251(*b*). The failure to give the cautionary instructions defendants now propose was not clearly erroneous.

However, even if defendants had made a timely objection, our review of *Lutwak* does not indicate that a cautionary instruction was required. *Lutwak* recognized the general rule that declarations of one conspirator, made in furtherance of the conspiracy, may be used against all co-conspirators on the theory that the

declarant is an agent of the other conspirators. (344 U.S. at 617.) However, declarations of a conspirator, not in furtherance of the conspiracy, are admissible at trial only as to the declarant and to prove the declarant's participation in the conspiracy, and such declarations are inadmissible as to all others. (344 U.S. at 618.) The Supreme Court stated that when a trial court admits into evidence hearsay declarations of a co-conspirator not in further-ance of the conspiracy it must instruct the jury at the time of the admission as to the limited consideration it may be given. (344 U.S. at 618.)

Even assuming, without deciding, the evidentiary rules set forth in *Lutwak* are wholly applicable in Kansas, they would not aid the defendants. Most of the hearsay admitted in the present case was that of co-conspirators made in furtherance of the conspiracy. Such evidence, according to *Lutwak,* is admissible as to all co-conspirators. The remaining hearsay, statements of co-conspirators Brandt and McLain allegedly made after the con-spiracy had ended, was admissible under an exception to the hearsay rule other than K.S.A. 60-460(*i*), the co-conspirator ex-ception. This latter hearsay will be discussed in the following section.

6. Defendants next contend that the district court erred in permitting Miller to testify as to conversations he had with State's witnesses Brandt and McLain after the conspiracy had ended. Miller's testimony was relevant evidence properly admissible under the exception to the hearsay rule embodied in K.S.A. 60-460(*a*).

Both Brandt and McLain were present at the hearing and available for cross-examination. When Miller was called as a witness, both Brandt and McLain had previously testified and had been cross-examined by the defendants. So far as is shown by the record, the defendants, if they had chosen to do so, could have requested Brandt and McLain be recalled for further questioning after Miller had testified. Under such circumstances, we must conclude Miller's testimony as to his conversations with Brandt and McLain was admissible under K.S.A. 60-460(*a*). *State v. Fisher,* supra, p. 82; *State v. Collazo,* 1 Kan. App. 2d 654, 574 P.2d 214 (1977).

The fact that neither Brandt nor McLain was physically present in the courtroom when Miller testified is of no moment. The

record indicates no effort was made to seek the return of Brandt and McLain to the courtroom while Miller was testifying. On the contrary, there is some indication the two were absent from the courtroom because of the defendants' request that the State's witnesses be sequestered. The absence of Brandt and McLain from the courtroom did not render them unavailable for cross-examination so as to exclude the admission of Miller's testimony under K.S.A. 60-460(*a*). *State v. Taylor,* 217 Kan. 706, 712-713, 538 P.2d 1375 (1975).

The credibility of Brandt and McLain was assailed by defense counsel throughout the trial. References were made to the fact that both men were bitter about the lack of help they received from Governor Docking during their unsuccessful confirmation proceedings. Reference was made to the fact that each had received immunity from prosecution in exchange for his testimony. Impeachment occurs when a suggestion is made by direct proof or by nature of an examination that a witness has testified falsely for hope of reward, promise of immunity, fear, or malice. *State v. Scott,* 210 Kan. 426, Syl. 2, 502 P.2d 753 (1972). Where a witness has been impeached or his credibility has been attacked, prior statements consistent with his testimony may be shown to rehabilitate or support the witness. *State v. Parrish,* 205 Kan. 178, Syl. 2, 468 P.2d 143 (1970); *State v. Scott,* supra, pp. 431-432. Miller's statements were admissible to rehabilitate or support the prior testimony of Brandt and McLain.

7. It is claimed the district court erred in allowing the State to examine Charles Campbell on redirect examination concerning the plea of *nolo contendere* entered by Marshall & Brown of Kansas and in permitting the special prosecutor to comment upon the *nolo contendere* plea in his closing argument.

We are unable to find in the record a contemporaneous objection lodged by the defendants during either the questioning of Campbell or the State's closing argument. Again, failure to comply with the contemporaneous objection rule bars defendants' challenge. *State v. Fisher,* supra, pp. 83-84. There is strong authority from other jurisdictions that a defendant is not entitled to a reversal on the basis of a prosecutor's statement before the jury that a co-defendant has pleaded guilty to the same offense where defense counsel fails to make a timely objection or to request curative action from the court. *People v. Shegog,* 44 Mich.

App. 230, 205 N.W.2d 278 (1972); *State v. Hodgson*, 44 N.J. 151, 207 A.2d 542 (1965); *Lowery v. State*, 21 Ala. App. 352, 108 So. 351 (1926); *Grandbouche v. People*, 104 Colo. 175, 89 P.2d 577 (1939).

Defendants' reliance upon *United States v. Harrell*, 436 F.2d 606 (5th Cir. 1970), for the proposition that an appellate court may consider the propriety of a prosecutor's reference to a co-defendant's plea of guilty, in absence of a timely objection by the defendant, is misplaced. That decision rests upon the federal "plain error" rule, and, as noted earlier, Kansas has no such rule. *State v. Fisher*, supra, p. 84.

Additionally, and assuming there was error resulting from the special prosecutor's references to the *nolo contendere* plea of Marshall & Brown of Kansas, it was provoked and invited by the defendants. There can be no real doubt but that defendants, as a part of their trial strategy, intentionally injected into the trial the fact that other defendants had been acquitted or the charges against them had been dismissed. This occurred through statements of defense counsel made on several occasions beginning with the voir dire and continuing throughout the trial.

One who by his acts invites error is in no position to complain or take advantage of it on appeal. *State v. Thomas*, 220 Kan. 104, 551 P.2d 873 (1976); *State v. Champ*, 218 Kan. 389, 543 P.2d 893 (1975); *State v. Cantrell*, 201 Kan. 182, 440 P.2d 580 (1968); *State v. Henderson*, 205 Kan. 231, 468 P.2d 136 (1970). There is no prejudicial error when a statement of a prosecutor is provoked and made in response to previous statements of defense counsel. *State v. Clark*, 222 Kan. 65, 563 P.2d 1028 (1977); *State v. Robinson*, 219 Kan. 218, 547 P.2d 335 (1976). It has generally been held that a defendant may not predicate error upon a prosecuting attorney's argument or a disclosure during trial that another defendant has been convicted or has pleaded guilty, where such argument or disclosure was provoked or induced by the defendant's counsel. 48 A.L.R.2d, Anno.: Conviction or Guilty Plea of Another § 4[e], p. 1031; *Klose v. United States*, 49 F.2d 177 (8th Cir. 1931).

8. The next argument of defendants is that the trial court erred in admitting the testimony of McLain and Brandt as to statements made by Malloy. Defendants contend the testimony was hearsay not admissible under the statutory exceptions.

We are unable to find in the record any reference in McLain's testimony to statements made by Malloy, and defendants' brief refers us to none.

Brandt testified as to two statements by Malloy. It was Brandt who testified that during the trip back to Topeka after the Townhouse Hotel meeting Malloy indicated, by holding up three fingers, that he had received money at the meeting. There was no contemporaneous objection. This testimony is not subject to review. K.S.A. 60-404.

The other reference by Brandt to statements of Malloy occurred during direct examination of Brandt concerning the Townhouse Hotel meeting. After Brandt testified that the luncheon was delayed, the following exchange occurred:

"Q. Now, did you discuss with anyone what the delay was?
"A. Yes. I said what's the delay? Why don't we sit down and eat.
"Q. Who were you discussing this with?
"A. Probably Malloy—Malloy, Dick Docking.
"Q. All right, and when you asked what the delay was, what was the response.
"MR. HECHT: Objection—hearsay.
"THE COURT: Mr. Bennett, do you want to respond to that objection.
"MR. BENNETT: Well, Your Honor, it would be our position, the same position that we have taken previously in that regard, that if the individual who made the statement or any of those individuals alleged to be co-conspirators—that's an exception to the hearsay rule.
"THE COURT: Permit the witness to answer.
"A. Well, the answer was that [Sidorowicz] had to go out and get the money.
. . . .
"Q. . . . What money?
. . . .
"A. Well, it was referred to as 'good faith money.'
"Q. Who referred to it as 'good faith money'?
"A. Dick Malloy."

Thus, Brandt testified that Malloy had told him that Sidorowicz had left the meeting for the purpose of getting the "good faith money."

There was evidence in the record that Malloy, if called to testify, would exercise his Fifth Amendment right to remain silent. Relying upon *State v. Oliphant,* 210 Kan. 451, 502 P.2d 626 (1972), defendants claim Malloy was not available for cross-examination within the meaning of K.S.A. 60-460(*a*), and therefore this testimony was inadmissible hearsay.

We need not decide whether Brandt's testimony would have

been admissible under K.S.A. 60-460(*a*) since it was admissible under another exception to the hearsay rule, the co-conspirator exception. K.S.A. 60-460(*i*), which we have heretofore referred to but not quoted, provides in part as follows:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

. . . .

"(*i*) *Vicarious admissions.* As against a party, a statement which would be admissible if made by the declarant at the hearing if . . . (2) the party and the declarant were participating in a plan to commit a crime or a civil wrong and the statement was relevant to the plan or its subject matter and was made while the plan was in existence and before its complete execution or other termination . . . ."

The State's evidence sufficiently proved that Malloy and Sidorowicz were "participating in a plan to commit a crime . . ." The statement made by the declarant Malloy and heard by the witness Brandt was relevant to the criminal plan and was made while the plan was in existence and before its complete termination. The testimony was admissible.

9. Defendants maintain that the district court erred in allowing the special prosecutor to argue during closing argument that the defendants had failed to prove their innocence. Defendants point to four passages in the State's closing argument that they contend constitute reference to their failure to prove their innocence. The challenged argument, defendants claim, deprived them of their constitutional right to remain silent and to require the State to prove its allegations against them beyond a reasonable doubt.

Once again, defendants did not make a timely and specific objection to the State's allegedly prejudicial closing argument. The rule of waiver discussed earlier is applicable here. And, also once again, reversible error cannot be predicated upon a complaint of misconduct of counsel in closing argument to the jury where no timely objection is lodged. *State v. Johnson,* supra; *State v. Anicker,* supra; *State v. Murrell,* supra. Furthermore, examination of the argument compels us to conclude that the statements made cannot be reasonably construed as argument that defendants failed to prove their innocence.

10. It is urged that defendants' convictions must be reversed because of "misconduct of the prosecutor in advising and in-

forming the witness Robert Brandt what to testify to in regard to the Townhouse Hotel incident." We disagree. Brandt testified that after returning to Topeka with Malloy and McLain on March 21, 1972, he traveled to Kansas City a second time and checked into the Townhouse Hotel. He identified his hotel registration card which was admitted as an exhibit. On cross-examination he testified that he registered some time between 10:24 p.m. and 5:30 a.m. that night. When asked how he knew his registration was within that time span, the substance of his response was that the special prosecutor had informed him that the State's investigation had developed the information. His personal knowledge was "it could probably be 10:30 [p.m.]." A representative of the Townhouse Hotel later testified that the registration was taken by an employee who had been on duty between 10:30 p.m. and 7:00 a.m.

However viewed, Brandt's testimony is not shown to have been false. It was elicited on cross-examination. Although his second statement of the time was based on his personal recollection, his first statement of the time was based on information furnished by the State. There was no motion to strike his first statement.

A witness is qualified to testify only as to those facts which he knows of his own knowledge, and if on cross-examination it appears that a witness does not know the facts to which he has testified, his evidence should be excluded. 81 Am. Jur. 2d, Witnesses § 75, p. 114; *Mann v. National Bank,* 34 Kan. 746, 10 Pac. 150 (1886); *Gas Co. v. Glass Co.,* 56 Kan. 614, 44 Pac. 621 (1896).

We discern no misconduct on the part of the special prosecutor requiring reversal. There is no evidence that the special prosecutor knowingly offered false or inadmissible evidence. The challenged testimony was not offered by the State; it was not false; and there was no request that it be stricken after having been elicited on cross-examination by the defense.

11. The defendants assert that the district court erred in failing to strike from the indictment the alleged overt acts of those co-defendants who had been acquitted or had charges against them dismissed and in admitting evidence of out-of-court declarations made by them under K.S.A. 60-460(*i*).

The cases relied upon by the defendants stand for the proposition that where all but one of the charged co-conspirators are acquitted, a verdict against one will not stand. *Romontio v.*

*United States,* 400 F.2d 618 (10th Cir. 1968); *Herman v. United States,* 289 F.2d 362 (5th Cir. 1961). The corollary rule is that "where the substantive offense is the overt act supporting conviction on the conspiracy count, an acquittal of the substantive offense operates as an acquittal of the conspiracy count, if the acquittal of the substantive offense constitutes a determination that the overt act was not committed. . . ." *Herman v. United States,* supra, p. 368.

In addition to these defendants who have been found guilty of conspiring to bribe Malloy, the indictment named three unindicted co-conspirators who were never prosecuted by the State and no determination as to their guilt or innocence was ever made. The Tenth Circuit recognized in *Romontio,* supra, p. 619, that "the result might well be different" where other known conspirators named in the indictment were not included as defendants. The conviction of one remaining defendant in a conspiracy prosecution is unaffected by failure to convict his co-defendants where it is alleged and proved that there were others not brought to trial because they were granted immunity. 91 A.L.R.2d, Annot.: Conspiracy—Other Parties—Disposition § 10, p. 721. Here, one other conspirator named in the indictment, Marshall & Brown of Kansas, pleaded *nolo contendere* and was found guilty. Of the 46 overt acts alleged in the indictment, several involved actions by these defendants, the three unindicted co-conspirators, and Marshall & Brown of Kansas. Under such circumstances, we must conclude that the cases relied upon by defendants are not applicable to the present case.

A jury may properly consider overt acts of acquitted or dismissed co-conspirators in the trial of other co-conspirators where they are not the only overt acts alleged. *United States v. Musgrave,* 483 F.2d 327, 333-334 (5th Cir. 1973).

The fact that other alleged co-conspirators were acquitted or had charges against them dismissed does not necessarily and standing alone render K.S.A. 60-460($i$) unavailable to the State for the purpose of introducing evidence of their out-of-court declarations.

Generally, in conspiracy cases, broad discretion and great latitude are permitted in the reception of evidence. 15A C.J.S., Conspiracy § 29, p. 690; *Phelps v. United States,* 160 F.2d 858, 873 (8th Cir. 1947); *Wangrow v. United States,* 399 F.2d 106 (8th Cir. 1968).

In Kansas, out-of-court declarations have been held admissible under the co-conspirator exception to the hearsay rule even though the declarant has not been joined in the indictment and no conspiracy is charged therein. *State v. Borserine,* supra, Syl. 2; *State v. Shaw,* 195 Kan. 677, 680, 408 P.2d 650 (1965); *State v. Adamson,* 197 Kan. 486, 419 P.2d 860 (1966).

If a proper foundation establishing a *prima facie* case of a conspiracy, including some extrinsic evidence other than the hearsay itself, between defendant and declarant (*State v. Borserine,* supra; *State v. Nirschl,* 208 Kan. 111, 114, 490 P.2d 917 [1971]) is made out, and the other statutory requirements are met, then the out-of-court declarations of a co-conspirator are admissible under K.S.A. 60-460(*i*). We have been directed to no Kansas, or other, case law which would require us to create an exception to the foregoing rule in every instance where the declarant has previously been acquitted of the conspiracy charge or had charges dismissed.

The acquittal and dismissal of other charged co-conspirators upon separate trials does not necessarily amount to more than that there was failure of proof as to those defendants. Their cases were tried to other juries. They may have been tried on other evidence. Their acquittals may have been for any number of reasons having nothing to do with their guilt. See *Platt v. State,* 143 Neb. 131, 142-143, 8 N.W.2d 849 (1943); *State v. Holzer,* 102 Cal. Rptr. 11, 25 Cal. App. 3d 456 (1972); *Rosecrans v. United States,* 378 F.2d 561 (5th Cir. 1967).

12. Defendants next argue they were denied their constitutional right of confrontation because the trial court permitted the State's witnesses to testify as to out-of-court statements made by unidentified persons. Defendants contend that much of the testimony of Brandt and Fisher concerning what was said by the participants at the Townhouse meeting on March 21, 1972, was inadmissible hearsay since those witnesses could not identify by whom the statements were made.

We have reviewed all parts of the record referred to by the defendants in their briefs and find that, with one exception, defendants failed to raise timely objections to the disputed testimony. We shall not review any of the testimony to which no objection was lodged.

During direct examination of McLain defendants did make a timely and specific objection. McLain had stated that someone, whom he could not identify, had told him where Sidorowicz had gone during the Townhouse meeting. When the State asked McLain what he had been told by the unidentified declarant, defendants objected on the ground it was hearsay. The court overruled the objection and McLain was permitted to testify that someone told him Sidorowicz had gone to the bank.

Again, we must conclude that the evidence was admissible under K.S.A. 60-460(*i*). There was evidence that all the participants at the Townhouse meeting "were participating in a plan to commit a crime . . ." and whoever made the statement to McLain, although the declarant could not be identified, was a co-conspirator. *State v. Borserine,* supra; *State v. Shaw,* supra; *State v. Trotter,* 203 Kan. 31, 453 P.2d 93 (1969).

13. Defendants argue that the district court's instruction No. 2 was erroneous. The instruction set forth the elements of conspiracy and bribery. Defendants claim the instruction was erroneous for two reasons.

First, it is said the instruction was erroneous because it failed to exclude all overt acts committed by those co-conspirators against whom charges had been dismissed or who had been acquitted. Defendants contend the district court should have instructed the jury that overt acts performed by the individuals in question could not be considered by the jury. We have held above that the district court did not err in refusing to strike from the indictment the overt acts allegedly committed by those persons who were subsequently acquitted or against whom charges were dismissed. Having so ruled, we discern no error in permitting the jury to consider overt acts committed by those indicted co-conspirators who were subsequently acquitted or had charges dismissed. *United States v. Musgrave,* supra, p. 333.

Secondly, defendants contend the instruction was erroneous in that it instructed the jury that defendants could be found guilty of bribing Malloy even though Malloy had no power or authority to bring about the ends the defendants allegedly sought. Defendants contend there was no evidence that there was a power or duty on the part of Malloy that could cause anyone to be appointed to the position of associate state architect. They assert that Malloy, by virtue of his position as appointments secretary to Governor

Docking, had no power or authority as to the selection of associate state architects.

K.S.A. 21-3901 defines bribery as follows:

"(a) Offering, giving or promising to give, directly or indirectly, to any public officer or public employee, any benefit, reward or consideration to which he is not legally entitled with intent thereby to influence such officer or employee with respect to the performance of his powers or duties as such officer or employee . . ."

Although the evidence did not indicate that Malloy had direct authority to award architectural contracts or appoint associate state architects, there was substantial evidence that he played a large, and possibly decisive, role in the process of selecting associate state architects and awarding architectural contracts. The fact that Malloy did not have the final authority to appoint associate state architects is not controlling. In *State v. Campbell,* 73 Kan. 688, 85 Pac. 784 (1906), a board of education had given authority for the letting of cleaning contracts to a superintendent of buildings. A member of the board was found guilty of bribery for receiving money to influence the superintendent to award the contract to a particular party. Federal cases are persuasive authority because the federal bribery statute (18 U.S.C. § 201) is similar to the Kansas bribery statute. In *United States v. Carson,* 464 F.2d 424 (2nd Cir. 1972), *cert. den.* 409 U.S. 949, 34 L.Ed.2d 219, 93 S.Ct. 268, it was held that an administrative assistant to a United States Senator was subject to the federal bribery statute in relation to his attempt to influence a federal agency, even though there was no direct power on his part to effect the result desired from the agency. In the opinion, cases from several federal circuit courts are cited for the following statement:

"There is no doubt that federal bribery statutes have been construed to cover any situation in which the advice or recommendation of a Government employee would be influential, irrespective of the employee's specific authority (or lack of same) to make a binding decision. . . ." (p. 433.)

Under the evidence, Malloy's recommendation as to the appointment of associate state architects was a substantial influence upon the ultimate selection. There was no error.

14. Marshall and Brown-Sidorowicz argues the district court erred in not requiring the State to identify which of its officers were agents engaged in the conspiracy. The argument is based on the general rule that an indictment or information must be sufficient to apprise a defendant of the charge against him.

It has been specifically held that an indictment need not allege for whose act a corporation is being charged in a criminal case. *United States v. Detroit Sheet Metal & Roofing C. Ass'n,* 116 F. Supp. 81, 91 (E.D. Mich. 1953); *United States v. Van Allen,* 28 F.R.D. 329 (S.D.N.Y. 1961); *State v. Oregon City Elks,* 17 Or. App. 124, 520 P.2d 900 (1974).

We are unable to apprehend how Marshall and Brown-Sidorowicz was prejudiced. It had only two officers: Sidorowicz was president and Frank Fisher was secretary-treasurer. Moreover, the only shareholders were Sidorowicz and Marshall & Brown of Kansas. The listing of overt acts in the indictment was sufficient to inform Marshall and Brown-Sidorowicz which of its officials, or both, had engaged in the conspiracy.

15. Defendants next contend that the district court erred in denying their motions for mistrial, new trial, for acquittal, and for judgment n.o.v. This is a catch-all argument which presents nothing additional for our consideration. The propriety of the district court rulings upon the defendants' motions depends upon the propriety of its decisions as to the substantive issues discussed elsewhere in this opinion.

16. Defendants argue the district court erred in denying their motion for separate trials and that serious prejudice resulted from such denial. In review of the record, we find no proper motion for separate trial filed by either of these defendants. A motion was filed by various former co-defendants as to their interests in Marshall and Brown-Sidorowicz; however, no motion was made for a separate trial by and on behalf of the corporation itself. Under such circumstances, we conclude that review of the district court's action is unnecessary. Further, the granting or denial of a motion for a separate trial is a matter within the sound discretion of the trial court and will not be overturned on appeal absent a clear abuse of discretion. *State v. Norwood,* 217 Kan. 150, 158, 535 P.2d 996 (1975); K.S.A. 22-3204. We find no abuse of discretion in the present case. Where two or more defendants are indicted for a joint transaction, it is inadvisable to split up the cases into many parts for separate trial in absence of very strong and cogent reasons therefor. *United States v. Smith,* 209 F. Supp. 907, 914 (E.D. Ill. 1962); *United States v. Wolfson,* 294 F. Supp. 267, 275 (D. Del. 1968).

17. Defendants argue it was reversible error for the district court to deny Sidorowicz the opportunity to have a board of paroles review his case. Sidorowicz contends that, since K.S.A. 20-2305 and K.S.A. 20-2305a provide for compensation for the district court judges who make up the paroles board, the district court is therefore obligated to convene the paroles board when requested to do so by a defendant. We cannot agree.

K.S.A. (now 1977 Supp.) 20-2301 authorizes the creation of a board of paroles in multi-judge districts such as Shawnee County. It is permissive. K.S.A. 20-2302 and K.S.A. 20-2303 prescribe the powers and duties of a board of paroles.

Nothing in the foregoing statutes compelled the district court to convene its board of paroles when asked to do so by a criminal defendant. We find no error in the refusal of the district court to grant Sidorowicz' request for board review.

18. Defendants assert the evidence was insufficient to sustain a verdict of guilty as to either defendant.

An appellate court's function in reviewing sufficiency of evidence, whether circumstantial or direct, to support a conviction is limited to ascertaining whether there is a basis in the evidence for a reasonable inference of guilt. *State v. Johnson,* 222 Kan. 465, 565 P.2d 993 (1977); *State v. Duncan,* 221 Kan. 714, 562 P.2d 84 (1977); *State v. Ritson,* 215 Kan. 742, 529 P.2d 90 (1974).

In the present case there was sufficient evidence for a reasonable inference of guilt as to both defendants.

As to Sidorowicz, there was testimony by McLain that he told Sidorowicz that a $30,000 political contribution to Governor Docking's campaign would be "advantageous" to Marshall and Brown-Sidorowicz' prospects for award of the Medical Center architectural contract. McLain testified Sidorowicz was not surprised by the request for a contribution, nor did he refuse to make it. McLain also testified that during the meeting at the Townhouse Hotel in Kansas City, Kansas, on March 21, 1972, he had been told, upon noticing that Sidorowicz had left the meeting, that Sidorowicz had gone to the bank to get $3,000. Brandt's testimony corroborated McLain's that Sidorowicz had left the Townhouse Hotel meeting to get the money. Brandt stated that the money Sidorowicz went to get was referred to by those in attendance at the meeting as "good faith money." A cashier and custodian of records at Sidorowicz' Kansas City, Kansas, bank

testified that Sidorowicz withdrew $3,000 on March 21, 1972. The check was admitted into evidence at the trial.

Fisher testified that Sidorowicz told him at the Townhouse meeting that Marshall and Brown-Sidorowicz would get the Medical Center architectural contract in exchange for a contribution equaling six percent of the contract. Sidorowicz also told Fisher that a ten percent down payment upon the political contribution would have to be paid that day in cash. McLain also testified as to telephone conversations with Sidorowicz, subsequent to the Townhouse meeting, in which he told Sidorowicz when further installments of the political contribution were required and when and where payments were to be made. There was testimony that Sidorowicz would call Fisher when further payments to the Docking campaign were required and would advise Fisher as to how payment was to be made. McLain testified how, according to instructions he gave Sidorowicz over the telephone, the money was collected at McLain's Kansas City, Kansas, apartment. There was evidence that none of the financial reports filed by Governor Docking's campaign organizations disclosed any contribution made by these defendants. The foregoing evidence is sufficient to establish a reasonable inference that Sidorowicz engaged in a conspiracy to bribe Governor Docking's appointments secretary, Malloy, for the purpose of procurement of the architectural contract.

The same evidence is applicable to the corporate defendant Marshall and Brown-Sidorowicz. Sidorowicz was president of the corporate defendant and Fisher was secretary-treasurer. The acts of both officers were imputable to the corporation.

19. The defendants last assert that the prejudicial cumulative effect of the claimed errors previously designated and discussed resulted in a denial of a fair trial to both defendants. We do not agree. The points raised by defendants, whether considered individually or cumulatively, did not deny defendants a fair trial. We have examined in some detail the lengthy record on appeal in this case. We are impressed with the district court's skillful handling of the complex issues which arose. The rights of the defendants were protected and a fair trial had.

As a final matter, we note that subsequent to the briefing of this case by the parties our Supreme Court has filed opinions in *State v. Roberts,* 223 Kan. 49, 574 P.2d 164 (1977), and *State v. Moody,*

223 Kan. 699, 576 P.2d 637 (1978). We have studied the opinions and are satisfied that our views and conclusions are not contrary thereto.

Affirmed.